## STATE *vs.* ANN ELIZA DAVIDSON.

To disparage a witness, on cross examination, he may be asked and required to answer almost any question, unless the answer may subject him to indictment, or to a penalty under a statute:

Therefore, on a trial of A for murder, after severance in an indictment against A, B, and C.; *Held,* that B, who having previously been convicted was examined as a witness for the State, might be asked by the defendant's counsel, for the purpose of contradicting him, whether he did not say to the counsel of C, while conversing with him, in jail, " that he was sorry A and C were put in jail for his devilment, &c."

MURDER, tried before *Logan, J.,* at Spring Term, 1872, of the Superior Court of MECKLENBURG. ·

The prisoner was indicted jointly with one Nat. Caldwell and her mother, Minerva Davidson, for the murder of the infant child of the prisoner, Caldwell being charged as principal, and the prisoner and Minerva as accessories. There was a severance, and the defendant was tried alone, upon a count charging her with aiding and abetting the said Caldwell in killing the child.

Nat. Caldwell, who had previously been tried and convicted, and was then under sentence of death, was examined as a witness by the State. He stated, in substance, that the prisoner, who was about seventeen years old, and lived in Charlotte, came to his house, some fourteen miles from Charlotte, when about four months gone in pregnancy, and remained there some time; that she left his house before the birth of the child, on account of the jealousy of witness' wife, and went to the house of one Dovie Turner, a neighbor; and that he and the prisoner formed a plot to murder the child, and he told Minerva Davidson of the plot, and she approved of it; that about two weeks after the birth of the child, Minerva gave him money to hire a horse and buggy to bring the prisoner home, and told him to tell her that, if she carried the child with her, she (Mi-

nerva) would kill her; that he went to the house of Dovie Turner in a buggy, and started with the prisoner and the child, about an hour by sun, on the road to Charlotte; that several times, on the way, he persuaded the prisoner to give him the child, that he might take it aside and destroy it, but she seemed reluctant to give it up; that when they got near Charlotte, in a thick piece of woods, he told her that was their last chance, and if she carried the child home her mother said she would kill her; that he stopped the buggy, gave the prisoner the reins to hold, went out and dug a hole in the ground with a fence-rail, returned and took the child, put it in the hole, and covered it up with leaves and dirt; that the child cried, and the prisoner began to weep; he threatened to give her the child to take home if she did not hush. She promised to try, and he returned to the buggy, and he and the prisoner remained until the child ceased crying, when they went on to Charlotte. On the way, the prisoner exclaimed, " Oh, my poor baby; how can I face my mother, knowing that she is the cause of all this!" He told her to say that she had sent the child to a lady in Salisbury.

On cross-examination, the witness, with a view of contradicting him, was asked by the prisoner's counsel, whether he had not said to Col. H. C. Jones, (who was the counsel of Minerva Davidson,) while conversing with him in jail, that he was sorry that Eliza and her mother were put in jail for his devilment; that if Eliza would tell the truth upon her mother she would come clear. The State objected, and the Court refused to permit the question to be answered, on the ground that the representations to Mr. Jones were confidential communications. The prisoner excepted.

Other points were raised, but the opinion of the Court renders it unnecessary that they should be stated.

Verdict of guilty. Motion in arrest of judgment overruled. Judgment of death, and appeal by the prisoner.

*Attorney General, Battle & Son,* and *Dupre,* for the State. *Dowd,* for the prisoner.

BOYDEN, J. On the trial of this case the following question was proposed to be put to the witness, Nat. Caldwell: "Did he not say to Col. H. C. Jones, while conversing with him in jail, that he was very sorry that Eliza and her mother were put in jail for his devilment, and that if Eliza would tell the truth upon her mother she would come clear." This testimony was objected to by the State, and the Court refused to permit the question to be answered, on the ground that the representations made by the witness to Col. Jones were confidential communications. It is admitted in this Court, on the part of the State, that if this evidence was otherwise admissible, it could not be rejected for reason given by the Judge. So, the question is, was the testimony competent for any purpose? If so, then it was error to reject it. *State* v. *Patterson,* 2 Ire., 346. The question in that case was in relation to the transaction then under investigation, and about which the witness had deposed; and Judge Gaston, in delivering the opinion of the Court, in the case of the *State* v. *Patterson,* says: "It is well settled that the credit of a witness may be impeached by proof that he has made representations inconsistent with his present testimony, and whenever these representations respect the subject matter, in regard to which he is examined, it never has been usual to enquire of the witness, before offering the disparaging testimony, whether he has, or has not made such representations." These remarks of the Judge were made, not to show that the witness might not himself be asked the question, but that in such a case the witness might be contradicted, without first asking him if he had not made such representations. In such a case, it has never been held that such a question might not be propounded to the witness. Indeed, the usual course is to put the question to the witness, but it is not necessary to do so, as in such a case he may be contradicted without first en-

quiring of the witness whether or not he has made such representations. No reason can be given, why such representations may not be as well proved by the witness who made them, as by any other witness, save that they have a tendency to disparage him. But this doctrine, in regard to asking questions of witnesses, tending to disparage them, has been greatly modified in modern times, and it is now held that you may put almost any question to the witness, and that the witness is bound to answer it, unless the answer might subject him to an indictment, or to a penalty under a statute. The question, we think, should have been permitted, and he was bound to have answered it.

As this disposes of the case in this Court, it is unnecessary to decide the other questions made in the case, some of which are not free from difficulty.

There is error. This will be certified.

Per Curiam.                                   Venire de novo.