STATE v. BUD HICKS.

(Filed 13 October, 1948.)

**1. Criminal Law § 53l—**

The court is at liberty to disregard oral requests for instructions which do not relate to a substantial and essential feature of the case. G. S., 1-181.

**2. Same: Criminal Law § 53d—**

The State relied upon the testimony of several eyewitnesses, one of whom testified he saw defendant fire the fatal shot, and also introduced some circumstantial evidence of guilt. *Held:* The failure of the court to charge upon the law of circumstantial evidence in response to defendant's oral request cannot be held for error, since the court is not required to charge on circumstantial evidence when the State relies mainly upon direct evidence which is sufficient, if believed, to warrant conviction. G. S., 1-180.

APPEAL by defendant, Bud Hicks, from *Williams, J.,* and a jury, at the July Term, 1948, of LEE.

STATE *v.* HICKS.

Bud Hicks was indicted for the murder of Thompson Hooker. As the State did not ask for a conviction of first degree murder, the court left it to the jury to determine from the evidence whether the accused was guilty of murder in the second degree, or manslaughter, or not guilty.

The State's evidence tended to show that Thompson Hooker was mortally wounded by a pistol bullet about 2:30 p.m. on June 6, 1948, while peacefully standing before the doorway of his home on Ramseur Street in Sanford. The State called to the stand six persons who claimed to have been eyewitnesses. These were Eliza Hooker, Hattie Watson, Wade Harrington, Joe Stone, Paul Hooker, and Will Hooker. All of them testified that at the instant of the shooting the defendant, Bud Hicks, and three companions were riding along Ramseur Street at a distance of some thirty feet from Thompson Hooker in a slowly moving automobile owned by the defendant, and that the fatal shot was fired from this vehicle. Eliza Hooker, Hattie Watson, Wade Harrington, and Joe Stone professed an inability to identify the shooter. But Will Hooker testified positively that he saw Bud Hicks push a pistol out of the rear window on the right side of the car and shoot Thompson Hooker. Paul Hooker deposed that he "heard a gun fire, and looked around, and saw Bud Hicks, and saw his hand being pulled back into the car, and there was a pistol in his hand." All of the State's witnesses agreed that immediately after the firing of the shot, the automobile speeded up and departed.

The defendant asserted that he and his companions left the neighborhood in which the deceased resided before the homicide, and were not connected with it in any way. Moreover, he offered testimony tending to show that Thompson Hooker was fatally wounded by the State's witness, Paul Hooker, while standing upon his porch and while arguing with Paul Hooker about some money.

The jury found the defendant guilty of murder in the second degree, and he appealed to this Court from the judgment entered on the verdict.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Neill McK. Salmon for the defendant, appellant.*

ERVIN, J. Near the conclusion of the charge, counsel for defendant orally requested the court "to go into the law with respect to circumstantial evidence," and the court declined to do so because it understood that "the State relies upon direct evidence." The failure of the court to charge on the law concerning circumstantial testimony is assigned as error on the appeal.

Before the oral prayer was made, the court fully, clearly, and correctly charged the jury as to the presumption of innocence surrounding the accused, and as to the burden resting upon the State to establish his guilt beyond a reasonable doubt as a condition precedent to his conviction, and as to the rules of the law of homicide arising upon the evidence given in the case. Since the request of the defendant for the court to instruct the jury on the law relating to circumstantial evidence was not reduced to writing in conformity to G. S., 1-181, the court was at liberty to disregard it unless the instruction orally asked concerned a "substantial and essential feature of the case embraced within the issue and arising on the evidence." *S. v. Johnson,* 193 N. C., 701, 138 S. E., 19.

It is a well settled principle in this jurisdiction that the duty imposed upon the trial court by G. S., 1-180, to "declare and explain the law" arising in the case on trial does not require the court to instruct the jury upon the law of circumstantial evidence in a criminal action involving both direct and circumstantial testimony where the State relies principally upon the direct evidence and the direct evidence is sufficient, if believed, to warrant the conviction of the accused. *S. v. Warren,* 228 N. C., 22, 44 S. E. (2d), 207; *S. v. Sutton,* 225 N. C., 332, 34 S. E. (2d), 195; *S. v. Wall,* 218 N. C., 566, 11 S. E. (2d), 880; *S. v. Neville,* 157 N. C., 591, 72 S. E., 798; *S. v. West,* 152 N. C., 832, 68 S. E., 14.

This principle applies to the instant action. While some of the testimony was circumstantial in nature, the State relied in the main upon direct evidence to establish both the *corpus delicti* and the identity of the slayer. The identification of the accused as the killer of the deceased was made to depend primarily and principally on the credibility of the State's witness, Will Hooker, who testified with positiveness that he saw the defendant fire the death-dealing bullet. Hence, it follows that the court did not err in failing to instruct the jury on the law relating to circumstantial evidence.

We have carefully considered the other assignments of error and have concluded that none of them are of sufficient moment to justify a new trial. They raise no novel questions. The judgment rendered below is upheld because we find in law

No error.