STATE OF NORTH CAROLINA v. SANDY DOUGLAS ROSS, JR.

No. 82

(Filed 29 August 1978)

1. **Criminal Law § 84— cross-examination of defendant—earlier search—exclusion of evidence on constitutional grounds not shown**

    In a prosecution for possession with intent to sell and sale of MDA, defendant's contention that his cross-examination concerning various illegal drugs found in his home in a prior unrelated search was improper because the search leading to the discovery of those drugs was subsequently declared unlawful in district court is without merit, since the exclusionary rule concerning the inadmissibility for impeachment purposes of evidence unconstitutionally obtained applies, if at all, only where a search and seizure has been declared illegal for constitutional reasons, and defendant failed to offer evidence of the lower court's disposition of the case against him stemming from the earlier search and thereby failed to show that the evidence seized was excluded on constitutional grounds.

2. **Criminal Law § 88.4— impeachment of defendant—prior crimes and degrading conduct—cross-examination proper**

    Cross-examination for impeachment purposes of a defendant as to his prior unrelated convictions and acts of misconduct does not place an unreasonable burden on defendant's right to testify, and therefore does not violate the Due Process Clause of the U. S. or N. C. Constitutions.

Justice EXUM dissenting.

Chief Justice SHARP and Justice LAKE join in the dissenting opinion.

ON defendant's appeal pursuant to G.S. 7A-30(1), and defendant's petition for discretionary review of the decision of

the Court of Appeals, reported in 35 N.C. App. 98, 239 S.E. 2d 843, which found no error in the trial before *Friday, J.*, at the 7 March 1977 Schedule "C" Criminal Session of MECKLENBURG Superior Court.

Defendant was tried and convicted of the possession with intent to sell methylenedioxy amphetamine (MDA), a controlled substance, and of the sale and delivery of MDA on 27 February 1975. From sentences imposed, defendant appealed to the Court of Appeals. That court found no error in the trial.

The State's evidence tended to show that on the night of 27 February 1975, R. T. Guerette, an undercover police officer, went to defendant's home in Charlotte and made a previously arranged purchase from defendant of two plastic bags containing MDA for $65.

Defendant testified and offered evidence by family members and employees of Carolina Fire Equipment Sales & Service, Inc., his place of employment. This testimony tended to show that on 26 February 1975 defendant was called by his father, the president of Carolina Fire Equipment Sales & Service, Inc., to come to Southport, North Carolina, to wire and hook up a burglar alarm system under a contract involving a nuclear power generating station. On 26 February defendant spent the night in a Wilmington motel. He checked out of the motel on the 27th and went to the Southport job site. Defendant testified that he worked at the site all day, and after completing his work drove back to Charlotte, arriving there sometime after daybreak on the 28th of February.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Attorney General Rufus L. Edmisten and Associate Attorney Jane Rankin Thompson for the State.*

*Rodney W. Seaford and Paul L. Whitfield for defendant appellant.*

MOORE, Justice.

[1] Under his first assignment of error defendant argues that the trial court erred in allowing the district attorney to cross-examine him regarding drugs found in his home during a prior unrelated search by the police subsequently held to be unlawful.

At trial defendant testified in his own behalf. On cross-examination the prosecutor asked defendant if "on the 3rd day of January, 1975 . . . you did not have in your possession in your house in your room a zip-locked bag containing a total of 145 milligrams of white powder, that being cocaine?" Counsel for defendant immediately objected, and his objection was overruled. Defendant then answered in the negative. Several pages of transcript follow, wherein the defendant was asked numerous questions regarding various forms of narcotics found in his home on 3 January 1975. Throughout this testimony the defendant indicated that he was not at home when the contraband was found, and that if it was found, it did not belong to him. Defendant finally admitted that he had "found out that something was found in my house" but that he "didn't find out where it was." On redirect examination defendant testified that he had been prosecuted for the drugs found in his home on 3 January 1975, but that a district court judge "ruled that the search of my house was unlawful."

Defendant now insists, citing *Walder v. United States*, 347 U.S. 62, 98 L.Ed. 503, 74 S.Ct. 354 (1954), and *Agnello v. United States*, 269 U.S. 20, 70 L.Ed. 145, 46 S.Ct. 4 (1925), that the admission of this evidence was a violation of the Fourth Amendment exclusionary rule. Defendant did not raise this specific objection at trial; instead, he did little more than enter general objections to the prosecutor's questions. Likewise, the defendant did not argue this particular constitutional objection before the Court of Appeals. Ordinarily the Supreme Court will not pass upon a constitutional question which was not raised and passed upon in the court below. *State v. Dorsett*, 272 N.C. 227, 158 S.E. 2d 15 (1967). We will, however, further consider defendant's argument for the purpose of noting additional defects in his appeal.

It is well established in this State that in the trial of every person charged with a crime, if the accused takes the stand in his own behalf he "shall be subject to cross-examination as other witnesses." G.S. 8-54. Any witness in a criminal case, including the defendant who testifies in his own behalf, may be cross-examined for purposes of impeachment with respect to prior convictions of crimes. *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975), and cases cited therein at p. 517. Cross-examination for purposes of impeachment is not, however, limited to questions concerning prior convictions, but also extends to questions relating to specific acts of criminal and degrading conduct for which there has been no conviction. *State v. Monk, supra; State v.*

*Foster,* 284 N.C. 259, 200 S.E. 2d 782 (1973); *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971). The scope of such cross-examination is normally subject to the discretion of the trial judge, and the questions must be asked in good faith. *State v. Williams, supra.* The purpose of this rule permitting such a wide scope for impeachment is that such evidence is a proper and relevant means of aiding the jury in assessing and weighing the credibility of the defendant.

Defendant now contends that his cross-examination concerning various illegal drugs found in his home was improper since the search leading to the discovery of those drugs was subsequently declared unlawful in district court. In *Agnello v. United States, supra,* the United States Supreme Court held that evidence unconstitutionally seized is not admissible in rebuttal of a defendant's testimony, where the defendant did not testify concerning such evidence on his direct examination and denied knowledge of it in answer to a question propounded on cross-examination over his objection. The *Agnello* rule was subsequently tempered somewhat in *Walder v. United States, supra,* where the highest court held that a defendant's assertion on direct examination that he never possessed any narcotics opens the door, solely for purposes of attacking his credibility, to evidence of narcotics unlawfully seized in connection with an earlier proceeding. The defendant argues that the exclusionary rule set forth in *Agnello,* and made applicable to the states in *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684 (1961), applies in this instance since the defendant made no reference to his use or possession of drugs on his direct examination.

Since the Supreme Court's decision in *Harris v. New York,* 401 U.S. 222, 28 L.Ed. 2d 1, 91 S.Ct. 643 (1971), the continued efficacy and scope of the exclusionary rule set forth in *Agnello* and *Walder* has been questioned. *Cf.* Dershowitz and Ely, "*Harris v. New York:* Some Anxious Observations on the Candor and Logic of the Emerging Nixon Majority," 80 Yale Law Journal 1198 (1971). The Supreme Court's subsequent decisions in *United States v. Calandra,* 414 U.S. 338, 38 L.Ed. 2d 561, 94 S.Ct. 613 (1974), *United States v. Janis,* 428 U.S. 433, 49 L.Ed. 2d 1046, 96 S.Ct. 3021 (1976), and *Stone v. Powell,* 428 U.S. 465, 49 L.Ed. 2d 1067, 96 S.Ct. 3037 (1976), have further limited the scope of the exclusionary rule in certain Fourth Amendment cases.

The question of the applicability of the exclusionary rule does not, however, concern us in the present case, for there is nothing

in the record to show that the prior unrelated search of defendant's home was declared unlawful for *constitutional* reasons. The only mention in the record of the outcome of the prior proceeding in district court is defendant's assertion on redirect examination that a district court judge "ruled that the search of my house was unlawful," and the prosecutor's infelicitous assertion, overruled by the court, that the search was ruled illegal "because an officer put his hand on the door knob and twisted it too soon, even though he had a valid search warrant. . . ."

The *Agnello-Walder* exclusionary rule concerning the inadmissibility for impeachment purposes of evidence unconstitutionally obtained applies, if at all, only where a search and seizure has been declared illegal for constitutional reasons. The rule would not apply in those instances where there has been a violation of the statutory procedures regulating searches and seizures contained in Chapter 15A of the General Statutes, unless there has been a "substantial violation" of the statutory provisions under G.S. 15A-974. The record in present case gives no indication of the nature of the alleged illegality involved in the search of defendant's home in January 1975. It is the duty of the appellant to see that the record is properly made up and transmitted. *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969). Where the defendant does not include in the record any matter tending to support his ground for objection, he has failed to carry the burden of showing error and has failed to make irregularity manifest. *State v. Duncan*, 270 N.C. 241, 154 S.E. 2d 53 (1967). An assignment of error based on matters outside the record is improper and must be disregarded on appeal. *State v. Hilton*, 271 N.C. 456, 156 S.E. 2d 833 (1967); *State v. Duncan, supra; State v. DeJournette*, 214 N.C. 575, 199 S.E. 920 (1938).

In the case at bar competent evidence of the lower court's disposition of the case against defendant stemming from the January 1975 search of his home is essential for review. Since the defendant has not included such evidence in the record, we cannot sustain his assignment of error concerning the admissibility of this impeachment evidence. This assignment is overruled.

[2] The defendant next contends that this Court should declare unconstitutional the cross-examination for impeachment purposes of a defendant as to his prior unrelated convictions and acts of misconduct. He argues that such cross-examination places an unreasonable burden on the defendant's right to testify, and

therefore violates the Due Process Clause of the Constitution of the United States and the Constitution of North Carolina. The United States Supreme Court has held in *McGautha v. California*, 402 U.S. 183, 28 L.Ed. 2d 711, 91 S.Ct. 1454 (1971); *Spencer v. Texas*, 385 U.S. 554, 17 L.Ed. 2d 606, 87 S.Ct. 648 (1967); and *Michelson v. United States*, 335 U.S. 469, 93 L.Ed. 168, 69 S.Ct. 213 (1948), that introduction of evidence of prior crimes of a defendant for various purposes does not violate the Fifth or Fourteenth Amendment, so long as the jury is instructed to limit consideration of the evidence to its proper function.

This Court has declined similar requests to revise its rule regarding impeachment in *State v. McKenna*, 289 N.C. 668, 224 S.E. 2d 537 (1976); *State v. Foster, supra;* and *State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972). In *State v. Foster, supra*, the Court said, in justification of the rule, "The rule is necessary to enable the State to sift the witness and impeach, if it can, the credibility of a defendant's self-serving testimony. . . ." Such continued support for the rule stems from the recognition that evidence of a witness's repeated violations of the law is relevant to the trustworthiness and credibility to be afforded him by the jury. Lack of trustworthiness may be evidenced by a witness's repeated and abiding contempt for the laws which he is legally and morally bound to obey. *Cf. State v. Duke*, 100 N.H. 292, 123 A. 2d 745 (1956). The probative value of evidence of prior crimes seems all the more relevant in the case of the witness who is also a defendant, for he, unlike a witness not on trial, has a direct interest in the outcome of the case, and there are therefore more substantial reasons for calling his credibility into account.

To be sure, a defendant with a prior record is put to a dilemma in deciding whether he should testify in his own defense. But the likelihood of undue prejudice accruing from the attempted impeachment of his testimony does not outweigh the court's substantial interest in arriving at the truth. Sufficient protection from undue prejudice is afforded by the court's instructions limiting consideration of the evidence of prior offenses to the matter of the defendant's credibility as a witness. Due process does not require more. *Cf. Spencer v. Texas, supra.* This assignment is overruled.

We have examined the entire record and find no prejudicial error. Hence the verdicts and judgment will be upheld.

No error.

Justice EXUM dissenting.

Believing defendant is entitled to a new trial because of improper cross-examination by the Assistant District Attorney, Mr. Irwin Coffield, I respectfully dissent.

The state's case rested entirely on the testimony of R. T. Guerette, an undercover police officer who testified that he purchased a controlled substance from defendant on the night of 27 February 1975 in Charlotte. Defendant testified and offered a number of corroborating witnesses to the effect that he was not in Charlotte at the time testified to by Guerette. It seems clear to me that the state then embarked on the improper, however successful, tactic of convicting defendant of the crime charged against him by trying him, in effect, for certain alleged past offenses of which he had been accused and acquitted.

Defendant testified that in the fall of 1974 he purchased a rather large single family dwelling on Briardale Drive in Charlotte. The dwelling consisted of four bedrooms, a basement, a downstairs den, a kitchen and two bathrooms. To help make payments on this home, defendant rented portions of the house to others. Several persons other than defendant were living there in January, 1975. Defendant himself, because of his job, spent much of his time away from home and on the road.

Apparently, according to the prosecutor's *questions*, a search of defendant's dwelling was conducted on 3 January 1975 at a time when defendant was not at home. Various illicit controlled substances, including cocaine, MDA, marijuana, phencyclidine, together with valium and tuinol were discovered during the search. Defendant was prosecuted in 1975 for possession of these substances. The charges against him, however, were dismissed in the District Court.

During the course of the prosecutor's cross-examination, defendant admitted two prior convictions for the possession of marijuana and amphetamines in Raleigh in 1973.

The district attorney then asked him whether on 3 January 1975 he possessed 150 milligrams of cocaine. Defendant denied that he did. The prosecutor then utilized, for eight pages in the record, what I consider to be an improper and highly prejudicial form of cross-examination. He asked defendant whether one M. B. Hinson entered his home on 3 January 1975 and found in defendant's room cocaine, 3.46 grams of MDA, 15.67 grams of mari-

State v. Ross

juana, a tablet of phencyclidine, 1900 grams of MDA, valium tablets, and tuinol in defendant's room. To these questions defendant consistently replied that he was not at home on the occasion in question, and could not admit or deny what an officer who searched the premises might have found or where he might have found it. He denied any knowledge of the presence of the items in his room.

One example from the record will suffice to illustrate the nature of the cross-examination:

"Q. Now, then Mr. Ross, on the 3rd day of January, 1975, I'll ask you, sir, if you did not have in your possession in your house in your room a zip-locked bag containing a total of 145 milligrams of white powder, that being cocaine?

MR. WHITFIELD: OBJECTION.

COURT: OVERRULED

DEFENDANT'S EXCEPTION #16.

A. No, sir.

Q. You deny that Officer M. B. Hinson came into your house on that date, searched your room and found that quantity of cocaine? Do you deny that, sir?

MR. WHITFIELD: OBJECTION.

COURT: OVERRULED.

DEFENDANT'S EXCEPTION #17.

A. I don't deny that he came into my house and he found something, but I don't know where he found it but he didn't find it in my room. If he did, I didn't put it there."

Thereafter the prosecutor never asked defendant whether he on the occasion in question *possessed* controlled substances. He asked him merely whether Officer Hinson found these substances *in his room*. Again, samples from the record will suffice to illustrate the point:

"Q. Do you deny that that [3.46 grams of MDA] was found in your room on that date at approximately 1310 hours, that being 1:10?

MR. WHITFIELD: OBJECTION.

---

A. I was not there, so I can't say where it was found.

COURT: OVERRULED."

. . . .

"Q. I'll ask you, sir, if on the third day of January, 1975, if found in your room, pursuant to a search warrant, was 15.67 grams of a green vegetable material, that material being marijuana?

MR. WHITFIELD: OBJECTION as to that question.

COURT: OVERRULED.

DEFENDANT'S EXCEPTION #26.

Q. Was it found in your room, sir?

OBJECTION.

OVERRULED.

DEFENDANT'S EXCEPTION #27.

A. I don't know. To my knowledge, it couldn't have been.

Q. I'll ask you, sir, if on the third day of January, 1975, if found in your room was a zipped-locked bag containing a mottled orange tablet, that tablet analyzed as containing phencyclidine, otherwise known as PCP?

MR. WHITFIELD: OBJECTION.

COURT: OVERRULED.

DEFENDANT'S EXCEPTION #28.

A. No, sir.

Q. Is what you're telling this jury, sir, that you deny it being found there because you don't have any knowledge of it? Is that what you're saying?

OBJECTION. OVERRULED.

DEFENDANT'S EXCEPTION #29.

A. Yes, sir.

Q. So you really have no basis for the denial on what you have stated in this courtroom. Is that right?

OBJECTION. OVERRULED.

DEFENDANT'S EXCEPTION #30.

A. Just the same thing I have said. I wasn't there so I don't know whether it was found in my room or not."

. . . .

"Q. How about four yellow capsules marked 18904, Tuinol, found in the dresser? Is it possible that you remember those being there on 3 January, '75, sir?

MR. WHITFIELD: OBJECTION.

COURT: OVERRULED.

DEFENDANT'S EXCEPTION #42.

A. No, sir.

Q. You don't deny, of course, that they were found there, do you?

MR. WHITFIELD: OBJECTION.

COURT: OVERRULED.

DEFENDANT'S EXCEPTION #43.

A. Like I said, I wasn't there. I don't know what was found there unless I stood there and watched somebody.

Q. You found out subsequently?

MR. WHITFIELD: OBJECTION.

COURT: OVERRULED.

DEFENDANT'S EXCEPTION #44.

A. Yes sir. I found out that something was found in my house. I didn't find out where it was."

The impropriety of this form of cross-examination is obvious. To inquire of defendant what some other person might have found in his room in a house where he and others were living is not, first of all, an inquiry concerning defendant's misconduct. Defendant would be guilty of misconduct only if he knowingly

possessed these controlled substances.[1] Second, the inquiry related to matters not within the knowledge of the defendant and were framed in such a way that defendant could not appropriately respond. The questions were not propounded in good faith. The cross-examination was a calculated attempt by the prosecutor to get before the jury evidence supplied by the questions themselves rather than by the witness' responses. Finally, this cross-examination inquired into criminal charges of which the defendant had earlier been acquitted and amounted to no more than questions about prior criminal accusations.

This kind of cross-examination was condemned in *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971). In a carefully considered opinion by Chief Justice Bobbitt, the Court overruled earlier cases which permitted cross-examination of a defendant regarding past accusations of crime. The Court concluded, 279 N.C. at 675, 185 S.E. 2d at 181:

> "It is permissible, for purposes of impeachment, to cross-examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct. *State v. Patterson*, 24 N.C. 346 (1842); *State v. Davidson*, 67 N.C. 119 (1872); *State v. Ross*, 275 N.C. 550, 553, 169 S.E. 2d 875, 878 (1969). Such questions relate to matters *within the knowledge of the witness*, not to accusations of any kind made by others. We do not undertake here to mark the limits of such cross-examination except to say generally (1) the scope thereof is subject to the discretion of the trial judge, and (2) the questions must be asked in good faith." (Emphasis original.)

Cross-examination of a defendant regarding his past use of heroin was sustained in *State v. McAllister*, 287 N.C. 178, 184, 214 S.E. 2d 75, 81 (1975), because "the questions related to the matters within the knowledge of the witness, not to accusations of any kind made by others, and were competent for the purpose of impeachment."

1. The fact that these substances might have been found in defendant's room would, of course, be some evidence that he knowingly possessed them if defendant were on trial for these earlier possessions. The point is that defendant was *not* on trial for these possessions. When cross-examining a witness for impeachment purposes the examiner is bound by the witness' answers, although the cases permit some "sifting" of the witness. *State v. Currie*, 293 N.C. 523, 238 S.E. 2d 477 (1977); *State v. Fountain*, 282 N.C. 58, 191 S.E. 2d 674 (1972). Such cross-examination must not, however, be permitted to evolve into a mini-trial on the question of defendant's guilt of the collateral misconduct. *See State v. Monk*, 286 N.C. 509, 517, 212 S.E. 2d 125, 132 (1975); 1 Stansbury's North Carolina Evidence § 112 (Brandis rev. 1973). It did so evolve in this case to the prejudice of defendant.

Nor do I believe this Court has carried this impeachment rule so far as to permit cross-examination about past criminal conduct for which a defendant has been tried and acquitted. The majority would extend the rule this far. I cannot agree to such an extension. The Court of Appeals has correctly held that a witness may not be impeached by cross-examination relating to a controlled substance charge which was later dismissed. *State v. Sharratt,* 29 N.C. App. 199, 223 S.E. 2d 906 (1976), *cert. denied,* 290 N.C. 554, 226 S.E. 2d 512 (1976), relying on *State v. Williams, supra.*

The kind of tactic used here by the prosecutor was considered at length in *State v. Phillips,* 240 N.C. 516, 82 S.E. 2d 762 (1954). In *Phillips* the prosecutor persisted in asking the defendants on cross-examination about various prior acts of misconduct which they consistently denied having committed. The court characterized the cross-examinations as an attempt by the state to put before the jury through its questions "supposed facts of which there is no evidence" and found the tactic sufficiently prejudicial to warrant a new trial. The questions put to the defendant in the case *sub judice* were even more vicious than those in *Phillips.* At least in *Phillips* the defendants could either admit or deny the accusations of the prosecutor. Here, however, the questions were asked about matters which defendant could neither admit nor deny. Defendant argues in his brief:

> "The defendant respectfully contends that there is a clear distinction between asking a defendant about previous degrading acts of conduct, or of matters within his own knowledge, and in asking questions with regard to activities of the police outside of the presence of the defendant, and in which the defendant took no part, and of which the defendant had no personal knowledge."

I fully agree and believe our cases require us to concede the correctness of this argument. Defendant should be granted a new trial.

Chief Justice SHARP and Justice LAKE join in this dissenting opinion.