STATE OF NORTH CAROLINA v. FRANKLIN ALBERT SIMMS, ALIAS FRANK HERSHAW

No. 7922SC56

(Filed 5 June 1979)

**1. Criminal Law § 91.4; Constitutional Law § 44— appointment of new counsel on day of trial—no continuance**

Where defendant's attorney requested permission to withdraw because of ethical reasons on the morning of the trial, the trial court did not err in refusing the request and refusing to continue the case, since defendant was adequately represented by another lawyer appointed by the court to be his "principal" counsel ninety minutes before trial began; both counsel participated in the case throughout the trial; defendant thus had the benefit of two lawyers; and defendant at no time expressed any dissatisfaction with his original attorney or with the addition of the "principal" attorney.

**2. Criminal Law § 91.7— absent witness—continuance properly denied**

The trial court did not abuse its discretion in denying a motion for continuance because of the absence of a witness when counsel had several months to confer with defendant and possible witnesses, and counsel only learned of the desired witness a short time before trial.

**3. Constitutional Law § 43; Criminal Law § 66.5— line-up prior to arrest—no right to counsel**

Defendant was not entitled to counsel during a line-up where he had not been arrested or charged in this case at the time of the line-up, and the fact that defendant had been charged with another offense in another county did not require that counsel be present.

**4. Criminal Law § 66.15— identification of defendant—independent origin of identification**

Evidence was sufficient to support the trial court's findings that witnesses' in-court identifications of defendant were based upon their personal observation at the time of the crime and were not tainted by any impermissible pretrial procedure where such evidence tended to show that the witnesses observed defendant at close range for three to five minutes; both witnesses gave officers detailed, accurate descriptions of defendant; both were emphatic about their identification of defendant at the preliminary hearing and one witness promptly pointed him out in a line-up proceeding and from photographs; and the crime and subsequent identifications were separated by a short interval of time.

5. **Criminal Law § 88.4— cross-examination of defendant—prior convictions and misconduct**

    Cross-examination of defendant with respect to prior convictions or acts of misconduct did not constitute prejudicial error, since nothing in the record indicated that the questions were asked in bad faith or concerned matters not within the knowledge of defendant.

APPEAL by defendant from *Hairston, Judge.* Judgment entered 19 October 1978 in Superior Court, IREDELL County. Heard in the Court of Appeals 24 April 1979.

Defendant was indicted and convicted of armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury. Judgment of imprisonment was entered for twenty-five to thirty-five years.

On 9 August 1978, defendant moved to suppress all evidence obtained from a pretrial line-up prior to arrest and all identification evidence resulting from defendant's arrest.

On the day of trial, 16 October 1978, defendant's court-appointed counsel, Mr. Bedford Cannon, moved to withdraw from the case for the reason that defendant had related a second set of facts to him that morning. This later statement involved the defense of alibi, was substantially different from prior statements and would significantly alter the defense strategy. The court denied Mr. Cannon's motion but appointed Mr. Constantine H. Kutteh II as defendant's principal counsel. Mr. Kutteh was appointed to the case approximately ninety minutes before the trial began.

Mr. Kutteh moved for a continuance for the reason that he was not prepared for trial due to his late appointment to the case. This motion was denied.

Before trial began, voir dire was held on the motion to suppress. The motion to suppress pretrial identification was overruled, the court entered an order finding facts and conclusions of law.

The State's evidence showed James Powell operated the Treat-U-Right Mart in Statesville. Larry Morrison was working there with him about 8:15 p.m. on 26 January 1978 when a black man with a gun in his hand ran in the door and hollered "this is a

holdup." The man was approaching Morrison with a small caliber revolver when Powell threw a camera at him. At this time, a second black man came in the store. Powell tried to go down the stairs but fell and the first man shot him in the right hand. Powell told him the money was in the cash register. The second man had already opened the cash register and taken $415 from it. The men told them not to follow and ran out of the store. Powell was taken to the hospital for treatment of his wound.

Powell described the man with the revolver as about 5 feet 7 inches tall, weighing 145 pounds and wearing dark clothes with a little gray snap-down bill pancake cap. The second man was about 5 feet 7 or 8 inches tall, weighing 155-160 pounds and had on a toboggan and flannel type coat. Over objection, in open court he identified Simms as the man who had the gun. Morrison also identified the defendant as the man with the gun at the robbery, and in general corroborated Powell's testimony.

Defendant's evidence showed he had lived in Los Angeles until he moved to Hickory the year before. On the night in question he had been playing Monopoly and bingo with his girlfriend, her sister and the sister's husband at his house from about 7:30 p.m. to 9:30 p.m. After they left, defendant and his girlfriend watched TV and went to sleep. Defendant works at Shuford Mills and does not own a gun. Janice Johnson corroborated defendant's testimony that she is his girlfriend and was with him at his house playing Monopoly and bingo with friends on the night of the robbery.

*Attorney General Edmisten, by Assistant Attorney General Ralf F. Haskell, for the State.*

*Pope, McMillan & Kutteh, by Constantine H. Kutteh II, and McElwee, Hall, McElwee & Cannon, by E. Bedford Cannon, for defendant appellant.*

MARTIN (Harry C.), Judge.

[1] Defendant argues the trial court should have allowed attorney Cannon to withdraw as counsel for defendant and continue the case. Defendant did not make the motion to remove attorney Cannon as his lawyer; the motion was made by Cannon on what he considered to be ethical grounds. Cannon was concerned about allowing defendant to testify to what he thought could be per-

jured testimony, in the light of defendant's previous statements to him about the case. The court did not allow Cannon to withdraw as counsel for defendant, but in order to relieve him of his ethical problems, the court appointed attorney Kutteh as "principal" counsel for defendant. This left defendant with two attorneys, one who had been with the case since 7 March 1978, prior to the preliminary hearing, and totally familiar with all aspects of the case; the second being appointed some ninety minutes before trial and unencumbered by the conflicting statements of defendant. Had the court allowed Cannon to withdraw as counsel, Kutteh's motion for continuance would have been allowed because he, alone, did not have sufficient time to prepare for trial. *Shankle v. Shankle*, 289 N.C. 473, 223 S.E. 2d 380 (1976); *State v. Moore*, 39 N.C. App. 643, 251 S.E. 2d 647 (1979). The trial court overcame this problem by keeping Cannon in the case and adding Kutteh as additional counsel. Both counsel participated in the case throughout the trial. Defendant had the benefit of two lawyers. The uncontradicted evidence shows defendant did not at any time express any dissatisfaction with Cannon as his attorney or with the addition of Kutteh. The case had been continued twice at prior sessions of court, once because defendant was being tried in another county and once on motion by defendant. The facts here are similar to *United States v. Abshire*, 471 F. 2d 116 (5th Cir. 1972), where defendant had appointed counsel for six months before trial who had thoroughly prepared the case for trial. Shortly before trial, additional counsel was appointed. He moved for continuance, which was denied. Both counsel actively participated in the trial. The Court held the defendant had received effective assistance of counsel and the denial of the continuance was proper. *See also Sykes v. Virginia*, 364 F. 2d 314 (4th Cir. 1966); *State v. Beeson*, 292 N.C. 602, 234 S.E. 2d 595 (1977).

[2] Defendant further contends a continuance was necessary in order for him to secure witnesses as to alibi. He told attorney Cannon about the necessity of these witnesses for the first time on the day the case was called for trial. Defendant had a duty to tell his lawyer about these witnesses before this late date. The trial court did not abuse its discretion in denying a motion for continuance because of the absence of a witness, when counsel had several months to confer with defendant and possible

witnesses, and counsel only learned of the desired witness a short time before trial. *State v. Payne*, 11 N.C. App. 101, 180 S.E. 2d 379, *aff'd*, 280 N.C. 170, 185 S.E. 2d 101 (1971); *State v. Scott*, 8 N.C. App. 281, 174 S.E. 2d 80, *cert. denied*, 277 N.C. 116 (1970). Defendant's counsel produced evidence in support of his contention of alibi through the testimony of defendant and the witness Janice Johnson. Where the absent witness's testimony would only be corroborative or cumulative of evidence offered, it is not an abuse of discretion to deny a motion for continuance because of the absence of the witness. *State v. Shirley*, 12 N.C. App. 440, 183 S.E. 2d 880, *cert. denied*, 279 N.C. 729, 184 S.E. 2d 885 (1971).

As stated in *Moore, supra*, the chief consideration is whether the grant or denial of a continuance will be in the furtherance of substantial justice. We hold the trial court did not err in denying attorney Cannon's motion to withdraw or in denying attorney Kutteh's motion for a continuance.

[3] Defendant objected to the admission in evidence of the results of a line-up viewed by the State's witnesses Morrison and Powell, in which defendant was identified as one of the robbers. Defendant contends he was denied the right to counsel at the line-up and that it was impermissibly suggestive. Defendant, at that time, was confined in another county on other charges and was brought from that jail to the line-up. Nine persons were in the line-up, which was for the purpose of seeking identification of suspects in several different cases, including the robbery of Powell. Defendant had not been arrested or charged with robbery of Powell at the time of the line-up. A person has a right to counsel at a pretrial line-up when it is a critical stage of the criminal prosecution against defendant. *Gilbert v. California*, 388 U.S. 263, 18 L.Ed. 2d 1178 (1967). However, this right only attaches at or after the commencement of adversary judicial proceedings against defendant. *Kirby v. Illinois*, 406 U.S. 682, 32 L.Ed. 2d 411 (1972); *State v. Watson*, 294 N.C. 159, 240 S.E. 2d 440 (1978); *State v. Sanders*, 33 N.C. App. 284, 235 S.E. 2d 94, *dis. rev. denied*, 293 N.C. 257, 237 S.E. 2d 539 (1977). Defendant had not been arrested or charged in this case at the time of the line-up, therefore, he was not entitled to counsel during the line-up procedure. The fact that defendant was charged with another offense in another county did not trigger the requirements of counsel under *Gilbert* in this case.

After the voir dire hearing on the line-up question, the court found facts and made conclusions of law that the proceeding was not impermissibly suggestive. Powell was unable to make a definite identification of defendant at the line-up. The evidence sustained the court's finding that the line-up procedure was proper and not impermissibly suggestive. We are bound by those findings on appeal when they are supported by competent evidence, and may not set them aside or modify them. *State v. Cox*, 289 N.C. 414, 222 S.E. 2d 246 (1976). The assignment of error is overruled.

Defendant also assigns as error the in-court identification of defendant by Powell and Morrison. This assignment also involves defendant's contention that the in-court proceeding was tainted by an improper photographic identification of defendant by Morrison. In *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247 (1968), the Supreme Court expressly approved identification of suspects by photograph and stated:

[E]ach case must be considered on its own facts, and . . . convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Id.* at 384, 19 L.Ed. 2d at 1253. This rule has been followed in North Carolina. *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974).

In evaluating the likelihood of mistaken identification, the following factors are to be considered: (1) the opportunity of the witness to see and observe the defendant at the time of the crime, (2) the witness's degree of attention to defendant, (3) the accuracy of witness's prior description of the defendant, (4) the level of certainty demonstrated by the witness at the confrontation, (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401 (1972); *State v. Hunt*, 287 N.C. 360, 215 S.E. 2d 40 (1975).

[4] In considering these factors, the evidence shows Morrison and Powell had ample time, three to five minutes, to see, observe and remember defendant. Defendant did not wear a mask. Powell could clearly see defendant because when defendant shot him, he

was within a few feet, standing over him. Morrison was face to face with defendant at close range when he handed the money to him. Both witnesses gave the officers detailed, accurate descriptions of defendant. Both witnesses were emphatic about their identification of defendant at the preliminary hearing and Morrison promptly pointed him out in the line-up proceeding and also from the photographs. The crime and the subsequent identifications were separated by a short interval of time. The trial court in its order on the voir dire hearing found facts that supported its conclusion that the in-court identifications were based upon their personal observation of defendant at the time the crime was committed, and were not tainted by any impermissible photographic identification procedure or line-up. The evidence supports these findings and they are conclusive on appeal. *State v. Cox, supra.* The assignments of error are overruled.

[5] We turn to defendant's contention that the cross-examination of him by the district attorney constitutes error. Defendant's counsel objected to thirteen questions put to defendant by the district attorney. All involved either alleged prior convictions or acts of misconduct by defendant. Nothing in the record indicates the questions were asked in bad faith or concerned matters not within the knowledge of defendant. Generally the scope of cross-examination is in the discretion of the trial judge and his rulings will not be held for error in the absence of showing that the questions improperly influenced the jury. *State v. McPherson,* 276 N.C. 482, 172 S.E. 2d 50 (1970). The solicitor may ask questions tending to discredit a witness, even though they are disparaging; however, he may not needlessly badger or humiliate the witness. *State v. Daye,* 281 N.C. 592, 189 S.E. 2d 481 (1972). A defendant may be asked about prior unrelated criminal convictions and whether he has done or committed certain criminal acts or reprehensible conduct. *State v. Waddell,* 289 N.C. 19, 220 S.E. 2d 293 (1975); *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874 (1972). In *State v. Cogdell,* 26 N.C. App. 522, 216 S.E. 2d 163, *cert. denied,* 288 N.C. 244, 217 S.E. 2d 668 (1975), the court approved the solicitor asking defendant in an armed robbery case whether he had ever used or possessed controlled substances.

Defendant relies upon the dissent in *State v. Ross,* 295 N.C. 488, 246 S.E. 2d 780 (1978). In *Ross,* the questions objected to related to what the officers found in defendant's house when he

was not there. Other persons rented portions of. the house from defendant. The questions set out in the dissent, except the first, did not relate to what defendant Ross did, but to the acts of the officers. The questions in the case at bar are directed to acts committed by defendant and do not come within those referred to in *Ross*. We hold the cross-examination of defendant did not constitute prejudicial error.

The defendant received a fair trial and we find

No error.

Judges PARKER and MITCHELL concur.