STATE OF NORTH CAROLINA v. JAMES WILLIE ASHLEY

No. 8126SC391

(Filed 3 November 1981)

1. Criminal Law § 46— evidence of defendant's flight properly admitted

In a case in which defendant was indicted for first degree rape, evidence of defendant's flight from the scene of the crime was properly admitted and the trial judge was correct in instructing on evidence of flight. Evidence of flight is only one circumstance bearing on defendant's guilt and is open to explanation in rebuttal by defendant.

2. Criminal Law § 88.4— impeachment of defendant—charges pending against him — cross-examination proper

By taking the stand and testifying on his own behalf, defendant was subject to impeachment by questions relating to specific acts of criminal and degrading conduct including questions related to charges pending against him in another state.

3. Criminal Law § 112.4— instruction on circumstantial evidence not required

As the testimony of the victim alone, if believed, was sufficient to warrant defendant's conviction of second degree rape, it was not error for the court to fail to charge upon the law of circumstantial evidence in response to defendant's oral request. Balancing the direct testimony of the victim against the defendant's flight and the result of the medical examination performed on the victim after the alleged rape does not lead to the conclusion the State relied extensively on circumstantial evidence.

4. Rape § 6— instruction on lack of consent proper

Where the victim's testimony clearly established that she was sexually assaulted against her will, the instruction to the jury that "consent induced by fear is not consent as a matter of law" was proper.

5. Rape § 6.1— failure to instruct on attempt to commit second degree rape proper

In light of the victim's unequivocal testimony supporting penetration and upon note that the absence of sperm and the absence of other physical symptoms would not be evidence of an attempted rape, in a prosecution for second

degree rape there was no evidence to support an instruction on the lesser offense of attempt to commit second degree rape.

**6. Rape § 7— sentence for second degree rape within statutory limits**

The record did not support defendant's contention that the trial judge imposed the maximum sentence for second degree rape based upon his mistaken assumption that the defendant could have been charged with and convicted of first degree rape, and as defendant was properly convicted of second degree rape under N.C.G.S. 14-27.3(a)(1), the sentence imposed, being within the statutory limit, was a matter for the sound discretion of the court. N.C.G.S. 14-27.3(b).

**7. Rape § 7— rape of twelve-year-old within provision of first degree rape statute**

N.C.G.S. 14-27.2 is substantially different from its predecessor, N.C.G.S. 14-21 (Supp. 1975), in that the legislature intended to include within the purview of N.C.G.S. 14-27.2 a child who is in her thirteenth year at the time of the rape.

APPEAL by defendant from *Smith, Judge.* Judgment entered 9 September 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 13 October 1981.

The defendant, James Willie Ashley, was indicted for first degree rape, tried and convicted for second degree rape, and sentenced to imprisonment for a maximum and minimum term of forty years. He appeals from his conviction and the imposition of this sentence.

The evidence at trial tended to show that the defendant had been living with Doris Stinson on and off for seven or eight years and had been acting as father to her two sons and a twelve-year-old daughter, Lisa. On 5 April 1980, the day of the alleged rape, Doris Stinson left for work and the defendant took the boys to a skating rink, leaving Lisa at home alone. When defendant returned to the house, he called Lisa into her mother's bedroom. According to Lisa's testimony, defendant then asked her to take down her pants. When she refused, he forcibly removed them, threw her onto the bed, and had sexual intercourse with her. He threatened to kill her if she related the incident to anyone.

Later Lisa and the defendant returned to the skating rink to pick up her brothers. When she was alone with her brothers, she told them what had happened. After her mother returned from work later that evening, Lisa related to her the details of the alleged sexual assault. The police were called and Lisa was taken

to Charlotte Memorial Hospital for examination. The examination revealed that Lisa had had sexual intercourse prior to the time she came to the hospital.

Defendant fled the scene. Doris Stinson received phone calls from him, originating in Fort Lauderdale, Florida, and in New Orleans, where he was eventually apprehended.

Defendant denied that he had raped Lisa or had in any way sexually assaulted her. He offered character witnesses and testified on his own behalf.

*Attorney General Edmisten, by Assistant Attorney General William F. Briley, for the State.*

*Appellate Defender Adam Stein for defendant.*

MARTIN (Harry C.), Judge.

[1] Defendant submits his first assignment of error as follows: "Did the trial court's denial of the defendant's motion to suppress evidence of flight and the giving of the pattern jury instruction on flight evidence constitute reversible error because the prejudicial impact of the flight evidence in this case outweighed its probative value on the question of the defendant's guilt?"

Underlying defendant's objection to the admission of this evidence is his contention that the inference from flight to consciousness of guilt is a weak one; that is, his flight indicated a fear of being incarcerated rather than an acknowledgment of guilt. According to defendant's testimony, he denied raping Lisa Stinson and asked the police if there was a test that could be performed on Lisa to determine whether she had been raped. An officer responded that there were tests which could be performed at the hospital. Defendant agreed to go to the hospital until the officer informed him that he would be required to ride in a police car. At this point the defendant fled because he had "learned a long time ago that if you get in a police car he's going to lock you up," and because he had house and car payments to make and he could not make a bond or afford a lawyer.

"In North Carolina it has long been held that '[s]ubsequent acts, including flight . . . are competent on the question of guilt. [Citations omitted.] The basis of this rule is that a guilty con-

science influences conduct.'" *State v. Jones*, 292 N.C. 513, 525, 234 S.E. 2d 555, 562 (1977). Evidence of flight is only one circumstance bearing on defendant's guilt and is open to explanation and rebuttal by the defendant. 2 Stansbury's N.C. Evidence § 178 (Brandis rev. 1973). In this case defendant was free to, and did in fact, testify as to his motives for fleeing. We find that evidence of defendant's flight was properly admitted. Moreover, the trial judge was correct in instructing on evidence of flight. "So long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged, the instruction is properly given. The fact that there may be other reasonable explanations for defendant's conduct does not render the instruction improper." *State v. Irick*, 291 N.C. 480, 494, 231 S.E. 2d 833, 842 (1977). *See also State v. Lampkins*, 283 N.C. 520, 196 S.E. 2d 697 (1973); *State v. DeBerry*, 38 N.C. App. 538, 248 S.E. 2d 356 (1978).

[2] Defendant next contends that the trial court committed reversible error in denying his motion to prohibit the state from cross-examining him about his alleged involvement in a robbery and sexual battery for which charges were pending against him in Florida. Defendant took the stand and testified on his own behalf. In doing so, he surrendered his privilege against self-incrimination. He was subject to impeachment by questions relating to specific acts of criminal and degrading conduct. *State v. Foster*, 284 N.C. 259, 200 S.E. 2d 782 (1973).

> Cross-examination for purposes of impeachment is not, however, limited to questions concerning prior convictions, but also extends to questions relating to specific acts of criminal and degrading conduct for which there has been no conviction. . . . The scope of such cross-examination is normally subject to the discretion of the trial judge, and the questions must be asked in good faith.

*State v. Ross*, 295 N.C. 488, 490-91, 246 S.E. 2d 780, 783 (1978) (citations omitted). In *Ross*, the Court noted that the purpose in permitting such wide scope for impeachment is to aid the jury in assessing and weighing the credibility of a defendant's often self-serving testimony.

The Supreme Court of North Carolina has declined to reverse this rule. *Ross*, *supra* (and cases cited therein). Nor does

the rule violate defendant's fifth or fourteenth amendment rights so long as the jury is instructed to limit its consideration of the evidence to the function of impeachment. *Ross, supra.* Defendant was permitted to and did invoke his fifth amendment privilege in an effort to thwart the state's efforts to question him concerning the charges pending against him in Florida. To invoke the fifth amendment does not, however, serve to bar cross-examination for impeachment purposes. The "likelihood of undue prejudice accruing from the attempted impeachment . . . does not outweigh the court's substantial interest in arriving at the truth." *Ross, supra,* at 493, 246 S.E. 2d at 785. *Accord, State v. Allen,* 34 N.C. App. 260, 237 S.E. 2d 869, *disc. rev. denied,* 293 N.C. 741 (1977). We find that these questions were proper and there is no basis in the record for finding a lack of good faith on the part of the district attorney.

**[3]** In defendant's third assignment of error, he contends that the trial court committed reversible error in denying his request that the jury be charged on the law of circumstantial evidence. Defendant concedes that where the state relies principally upon direct evidence which is sufficient, if believed, to warrant conviction, the failure of the court to charge upon the law of circumstantial evidence in response to defendant's oral request is not error. *State v. Hicks,* 229 N.C. 345, 49 S.E. 2d 639 (1948). However, defendant maintains that the state relied extensively on circumstantial evidence in its case against the defendant and therefore the requested instruction was required. *State v. Newton,* 25 N.C. App. 277, 212 S.E. 2d 700 (1975). *See also State v. Beach,* 283 N.C. 261, 196 S.E. 2d 214 (1973); *State v. Lowther,* 265 N.C. 315, 144 S.E. 2d 64 (1965).

We balance the direct testimony of Lisa Stinson against what defendant advances as circumstancial evidence: defendant's flight and the results of the medical examination performed on Lisa after the alleged rape. We cannot agree with defendant that the state relied extensively on circumstantial evidence. Lisa Stinson's testimony alone, if believed, was sufficient to warrant defendant's conviction. *Hicks, supra.* We find no merit in defendant's third assignment of error.

**[4]** Defendant next takes exception to the trial court's instruction to the jury that "consent induced by fear is not consent as a

matter of law." It is defendant's contention that this portion of the instruction is erroneous inasmuch as "[t]here was no evidence . . . that Lisa Stinson consented to have intercourse with the defendant or that she did not resist or ceased resistance through fear of great harm." Defendant does admit that the state's evidence showed that he used his superior strength to physically force Lisa to have intercourse with him. Whether she was induced by fear or overcome by defendant's physical forcefulness, Lisa's testimony clearly establishes that she was sexually assaulted against her will. She did not consent to having intercourse with the defendant. The state was entitled to an instruction on this issue to ensure that the jury gave proper consideration to Lisa's relative lack of resistance. We find no prejudicial error in the instruction.

[5] As his fifth assignment of error defendant contends that the trial judge was required, under the facts of this case, to instruct on the lesser included offense of attempt to commit second degree rape. Defendant relies on evidence presented by the state which suggests that there was no vaginal penetration:

> 1. Lisa Stinson testified that after the alleged rape she saw her brothers and mother and stated that James (the defendant) had *tried* to mess with her again.

> 2. Dr. Alice Bishoprick testified that she found sperm present when she examined Lisa at the hospital. However, Dr. Lewis Portis from the Charlotte police laboratory testified that he did not find any evidence of sperm when he examined the swabs from the rape kit taken of Lisa Stinson.

> 3. Dr. Bishoprick testified that when she examined Lisa several hours after the alleged rape, she did not find any bruises, abrasions, tears, swelling, or edema in the genital area.

We note first that the absence of sperm would not be evidence of an attempted rape since ejaculation is not an element of the offense of rape. N.C. Gen. Stat. § 14-27.2 (Supp. 1979). Moreover, the absence of other physical symptoms such as swelling or abrasions does not support a finding of attempted rape, as vaginal intercourse requires only the slightest penetration. *State v. Flippin*, 280 N.C. 682, 186 S.E. 2d 917 (1972). Lisa's statement

that "James tried to mess with me again," taken in the context of her other unequivocal testimony that the defendant "threw me on the bed, dropped his shorts, and put his penis into my vagina," amounts to little more than an inept description of what occurred. "[W]hen all the evidence tends to show that the accused committed the crime with which he is charged and there is no evidence of guilt of a lesser-included offense, the court correctly refuses to charge on the unsupported lesser offense." *State v. Redfern*, 291 N.C. 319, 321, 230 S.E. 2d 152, 153 (1976). *Accord, State v. Summitt,* 301 N.C. 591, 273 S.E. 2d 425 (1981); *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976). From the record we find no evidence to support an instruction of attempt to commit second degree rape.

**[6, 7]** Finally, defendant contends that he is entitled to a remand for resentencing because the trial judge imposed the maximum sentence for second degree rape based on his mistaken assumption that the defendant could have been charged with and convicted of first degree rape. The record does not support this contention. Before imposing sentence the trial judge stated: "I'm going to impose the sentence I think is appropriate for the crime for which he [the defendant] has been convicted." The character and extent of the punishment to be imposed, if within the limits of the sentence permitted by law, is a matter for the sound discretion of the court and may be reviewed by the appellate court only in case of manifest and gross abuse. *State v. Hullender*, 8 N.C. App. 41, 173 S.E. 2d 581 (1970). The defendant was properly convicted of second degree rape under N.C.G.S. 14-27.3(a)(1) and the sentence imposed is within the statutory limit of forty years provided for in this statute. N.C. Gen. Stat. § 14-27.3(b) (Supp. 1979).

However, because defendant has raised an issue involving the statutory construction of N.C.G.S. 14-27.2, effective 1 January 1980, we will deal with this assignment in further detail. Defendant has alleged that under the correct interpretation of this statute, he could not have been convicted of first degree rape because Lisa Stinson's twelfth birthday had already passed on the day of the alleged rape. We cannot agree with defendant.

N.C.G.S. 14-27.2 reads in pertinent part: "(a) A person is guilty of rape in the first degree if the person engages in vaginal in-

tercourse: . . . (2) With a victim *who is a child of the age of 12 years or less* and the defendant is four or more years older than the victim." (Emphasis added.)

According to the plain language of the statute, until Lisa reached her thirteenth birthday she was a child of the age of twelve.

We note that the wording in N.C.G.S. 14-27.2 is substantially different from its predecessor, N.C.G.S. 14-21 (Supp. 1975), which stated in pertinent part: "(a) First-Degree Rape—(1) If the person guilty of rape is more than 16 years of age, and the rape victim is a virtuous female child *under the age of 12 years*, the punishment shall be death . . .." (Emphasis added.) We can only assume that by changing the language of the statute from "under the age of 12 years" to "12 years or less" the legislature intended to include within the purview of the new statute a child who is in her thirteenth year at the time of the rape.

We find that defendant had a fair trial, free of prejudicial error.

No error.

Judges HEDRICK and CLARK concur.