STATE OF NORTH CAROLINA v. ANNETTE JOHNSON PUGH

No. 806SC11

(Filed 5 August 1980)

1. **Assault and Battery § 14.5– assault with deadly weapon with intent to kill inflicting serious injury**

    In a prosecution for assault with a deadly weapon with intent to kill inflicting serious bodily injury, defendant's comment about "getting it on" at the time of the crime together with the nature of the wounds inflicted upon the victim showed circumstances from which the jury could reasonably infer that defendant possessed the requisite specific intent to kill the victim.

2. **Assault and Battery § 15.3– intent to kill – instructions adequate**

    In a prosecution for assault with a deadly weapon with intent to kill inflicting serious bodily injury, the trial court's instruction on intent to kill did not give the jury the impression that it could infer an intent to kill solely from defendant's commission of the crime of assault with a deadly weapon inflicting serious injury.

3. **Assault and Battery § 16.1– assault with deadly weapon with intent to kill inflicting serious injury – submission of lesser offense not required**

    In a prosecution for assault with a deadly weapon with intent to kill inflicting serious bodily injury where the evidence showed that defendant stabbed the victim with a large knife, thereby inflicting serious injury, the trial court did not err in failing to charge the jury on the lesser included offense of assault with a deadly weapon.

4. **Constitutional Law § 74; Criminal Law § 48– impeachment of defendant – failure to state certain facts to officer – no improper use of defendant's silence**

    An officer's testimony that defendant failed to say anything about deceased having a pistol or about threats by deceased to blow her brains out did not constitute a use of defendant's post-arrest silence in violation of the Due Process Clause of the Fourteenth Amendment to the U. S. Constitution and was properly admitted to impeach defendant's testimony at trial by showing inconsistencies between that testimony and her prior statement to the officer.

APPEAL by defendant from *Small, Judge.* Judgment and commitment entered 6 September 1979 in Superior Court, BERTIE County. Heard in the Court of Appeals 14 May 1980.

*Gillam, Gillam & Smith, by Lloyd C. Smith, Jr., for the defendant appellant.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General George W. Lennon, for the State.*

WELLS, Judge.

In this case the defendant was charged and convicted of assault with a deadly weapon with intent to kill inflicting serious bodily injury upon Mary Bond Craig, in violation of G.S. 14-32(b). The State's evidence tended to show that at about 5:00 p.m. on 25 December 1978 the victim, Mary Bond Craig, drove to Leroy Speller's house to take Mr. Speller to a Christmas dinner. At the time she called on Mr. Speller, defendant was present in the house and said, "Leroy ain't going nowhere [sic]." Defendant stated, "Okay, let's get it on," and stabbed Mrs. Craig with a butcher knife in her breast and upper right arm. Mrs. Craig fell to the floor fracturing her arm. Defendant admitted cutting Mrs. Craig in the arm with the knife, but denied that she caused any of Mrs. Craig's other injuries. Defendant claimed that the stabbing occurred in self defense when Mrs. Craig was prepared to draw a pistol on her.

[1] In her first assignment of error, defendant contends the trial court erred in failing to grant her motion for a nonsuit. Viewed in the light most favorable to the State, defendant's comment about "getting it on" together with the nature of the wounds inflicted upon Mrs. Craig shows circumstances from which the jury could reasonably infer that defendant possessed the requisite specific intent to kill Mrs. Craig. *See, State v. Parks,* 290 N.C. 748, 228 S.E. 2d 248 (1976); *State v. Thacker,* 281 N.C. 447, 189 S.E. 2d 145 (1972); *State v. Reives,* 29 N.C. App. 11, 222 S.E. 2d 727 (1976), *disc. rev. denied,* 289 N.C. 728, 224 S.E. 2d 675 (1976). This assignment of error is overruled.

State v. Pugh

**[2]** The defendant next assigns as error that portion of the trial court's charge to the jury instructing the jury on the statutorily required "intent to kill." Defendant argues that the charge could have given the jury the impression that it could infer an intent to kill solely from defendant's commission of the crime of assault with a deadly weapon inflicting serious injury. Had the charge been susceptible of such an interpretation, prejudicial error would have resulted. *See, State v. Parks, supra.* In the present case, however, the trial court in its charge carefully distinguished the offense of assault with a deadly weapon with intent to kill inflicting serious bodily injury from the lesser included offense of assault with a deadly weapon inflicting serious bodily injury, and properly charged the jury as to all elements of the greater offense. This assignment of error is overruled.

**[3]** Defendant also assigns as error the trial court's failure to charge the jury on the lesser included offense of assault with a deadly weapon. The evidence in this case shows that defendant stabbed Mrs. Craig with a large knife and, that if there was an assault here at all, it was with a deadly weapon which inflicted serious bodily injury. *State v. Davis,* 33 N.C. App. 262, 234 S.E. 2d 762 (1977); *State v. Williams,* 31 N.C. App. 111, 228 S.E. 2d 668 (1976), *disc. rev. denied,* 291 N.C. 450, 230 S.E. 2d 767 (1976). This assignment of error is overruled.

**[4]** Defendant also assigns as error the admission of rebuttal testimony of Deputy Sheriff Morris as to inconsistencies between defendant's post-arrest voluntary statement and her exculpatory testimony at trial. After receiving her *Miranda* rights the defendant voluntarily submitted a statement to Sheriff Morris which was introduced by the State at trial without objection from the defendant. The statement was exculpatory in nature, stating that Mary Craig walked into Leroy Speller's house, told Speller she was taking him to her house and went into the bathroom and put "something" in her bra. According to the statement, Mary Craig then stood in front of the defendant, said that she would "take all three of us together" and "do you want to make something of it," and had started to reach into her bra when the defendant stabbed her. Deputy Sheriff Morris testified that he asked the defendant

other questions after she had submitted the statement, and that defendant said she did not see any weapon. At trial, the defendant testified that Mary Craig put a pistol in her bra and said that she would, "blow my God damned brains out."

The testimony of Morris admitted by the trial court to which the defendant objects is as follows:

Q. Did the defendant, Annette Pugh, ever state to you anything about any pistol when you talked with her?

MR. SMITH: OBJECTION.

THE COURT: OVERRULED.

\* \* \*

A. No, she did not. She never has.

\* \* \*

Q. Did Annette Pugh, on August 28, 1978, ever tell you that — December 28, 1978, ever tell you that Mary Bond Craig stated, "God damn, I'm going to blow your brains out — I'm going to blow your God damned brains out — G-d brains out?"

MR. SMITH: OBJECTION.

THE COURT: OVERRULED.

A. No, sir, she did not.

Q. Did Annette Pugh, on December 25, 1978, ever tell you that Mary Bond Craig had the knife in her hand and must have stabbed herself in the breast?

MR. SMITH: OBJECTION.

THE COURT: OVERRULED.

State v. Pugh

\* \* \*

A. No, sir, she did not.

Q. Did Annette Pugh ever indicate to you on December 28, 1978, that she had anything else to say to you other than what she put down on this statement?

A. No sir.

MR. SMITH: OBJECTION.

THE COURT: Well, the answer having been made before the objection was lodged, OBJECTION OVERRULED.

Defendant argues that the admission of this testimony constitutes a use of defendant's post-arrest silence in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Defendant cites *Doyle v. Ohio*, 426 U.S. 610, 49 L.Ed. 2d 91, 96 S.Ct. 2240 (1976) in support of her argument. In *Doyle, supra,* the Supreme Court of the United States held that a defendant in a criminal proceeding who presents an exculpatory story for the first time at trial may not be impeached by his silence after he has been given his *Miranda* rights, the Court stating that the use of a defendant's silence in such a manner violates his Fourteenth Amendment due process rights. The Court reasoned that the ambiguity of post-arrest silence ( *see e.g., United States v. Hale*, 422 U.S. 171, 45 L.Ed. 2d 99, 95 S.Ct. 2133 (1975)) as well as the implicit guarantee stated in the *Miranda* warning itself that the defendant's silence will not be used against him, mitigated against this practice. The case now before us is clearly distinguishable from *Doyle*. Here, the testimony of Deputy Morris served to impeach defendant's statement at trial by showing inconsistencies between that testimony and her prior statement. We have previously held that evidence of such inconsistencies is admissible to impeach the in-court testimony of a defendant. *State v. Fisher*, 32 N.C. App. 722, 233 S.E. 2d 634 (1977). This assignment of error is overruled.

No error.

Judges WEBB and MARTIN (Harry C.) concur.