STATE OF NORTH CAROLINA v. GEORGE THOMAS FOSTER

No. 8210SC1160

(Filed 16 August 1983)

**Criminal Law § 85.2— evidence of mug shot—refusal to give limiting instruction**

> The trial court in an armed robbery case erred in refusing to give defendant's requested instruction that evidence of a "mug shot" taken of defendant several months prior to the crime charged was not to be considered against defendant in determining his guilt or innocence of the crime charged, and such error was prejudicial where the State's case against defendant rested exclusively on identification testimony of one witness.

APPEAL by defendant from *Brewer, Judge.* Judgment entered 14 July 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 15 April 1983.

The defendant, George Thomas Foster, was convicted of robbery with a dangerous weapon at the 12 July 1982 Criminal Session of Superior Court. On 14 July 1982, Judge Brewer sentenced the defendant to 17 years imprisonment. From the judgment and imposition of an active sentence in excess of the presumptive, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General John W. Lassiter, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender James H. Gold, for defendant appellant.*

JOHNSON, Judge.

The sole question presented for review is whether defendant is entitled to a new trial because of the trial court's refusal to give his requested instruction limiting the purposes for which the jury could consider the evidence that a "mug shot" was taken of the defendant four months before the charged offense occurred. For the reasons set forth below, we hold that the trial court's refusal to give the limiting instruction requested by defendant was prejudicial error, entitling defendant to a new trial.

The charges against defendant arose out of the robbery of the Community Grocery Store in Wake County on the afternoon of 4 March 1982. The State's case against the defendant rested

entirely on the identification testimony of one witness. The defendant did not take the stand as a witness and did not present any evidence on his behalf.

The State's evidence tended to show that Elbert King was working at the Community Grocery Store, owned by his wife, on the afternoon in question. King testified that he was talking to a customer at the back of the store around 3:30 or 4:00 p.m. when two men walked in. King testified that when he turned around, one man was standing in front of the cash register with a pistol in his hand demanding money. King gave that man money from his pocket and from the cash register. King testified that he had never seen the robber before the day of the robbery and estimated that the robber was in the store for a total of three or four minutes. King identified the defendant as the man with the gun who robbed the store and testified that he did not get a good look at the other person.

King further testified that after the defendant got the money he ordered King to lie down behind a chair; that he did so and could not see anything further; that two shots were fired into the ceiling; thereafter King got up and went outside where he spotted the two men running about two hundred yards away. King then called the police and described the robbers as being "two colored guys."

That same evening, King looked through five or six "mug books," but was unable to positively identify the robber. A couple of days later, Deputy Bissette showed King two folders of photographs which King referred to as "mug shots." King testified that he picked out the defendant's picture as being the robber. At trial, King identified State's Exhibits 1 and 2 as being the folders that he was previously shown, and held up the folder which contained the defendant's picture and pointed to that photograph for the jury.

Detective Joe Gerrell testified that he investigated the robbery reported by Mr. King and prepared a photographic display to show Mr. King which included a photograph of the defendant. Gerrell identified State's Exhibits 1 and 2 as being the folders he prepared for the photo identification and gave the following testimony on direct examination:

Q. And who are the persons that are photographed in those sixteen separate photographs?' Not necessarily by name but by description.

A. Right. They are people that, that have been photographed by CCBI, which is the City-County Bureau of Identification and we try to take—if we've got one suspect in say one folder, I try to pick seven people that are similar to same height, similar face description and so forth.

Gerrell testified that he asked Deputy Bissette to show the lineups to Mr. King on 6 March. Gerrell held up the folder which contained the defendant's photograph and pointed it out to the members of the jury.

On cross-examination Gerrell testified that fingerprints were taken at the crime scene and a fingerprint was found, but it did not match the defendant's fingerprints. No weapon was ever recovered linked to the investigation of this robbery.

Deputy P. J. Bissette identified State's Exhibits 1 and 2 as the folders containing the 16 photographs which he showed to Mr. King on 6 March 1982. Bissette identified the photograph which Mr. King picked out by holding it up and pointing to it so that the jury could see:

Q. And would you hold that up and point to it so that the members of the jury could see it.

A. This photograph here. Is, also identified by CCBI number 35464. Which each photograph is numbered and that was the number on the photograph.

Bissette testified that the defendant's photograph was taken on 5 December 1981, several months before the robbery. No testimony was presented that King had ever given the police a more detailed description of the robbers than their being "two colored guys."

At the conclusion of the State's evidence, State's Exhibits 1 and 2, the two folders containing the photographs shown to King, were admitted into evidence and passed to the jury. Thus, throughout the defendant's trial, the jury had ample opportunity to consider that the defendant's "mug shot" indicated that he had been "involved" with the police prior to the commission of the

charged offense. The record discloses that the two folders each contained eight 3½″ x 5″ colored glossy photographs showing 16 individuals, including defendant, in full-face, standing before height charts and holding cards in front of themselves. These cards are two-toned; the top portion is black with white numbers indicating the police file number and the larger bottom portion contains "CCBI" in bold black print against a white background. The card in front of defendant states:

12-05-81                     35464

CCBI

CITY-COUNTY BUREAU OF IDENTIFICATION

RALEIGH, WAKE COUNTY

NORTH CAROLINA

The following interchange occurred at the close of all the evidence:

> DEFENDANT: And, Your Honor, I would like to make a motion now for mistrial or in the alternative for a new trial on the grounds that the passing of the photographs, including that of George Foster, to the jury in which the photographs show Mr. Foster in a photographic line-up dated December of 1981, some four months prior to the offense, is the obvious circumstance of being a mug shot in which a person is under arrest or under suspicion for a crime, is character evidence put into evidence in front of the jury prior to the time that the defendant's character has ever been put into issue in this case and it, also, violates his presumption of innocence, Your Honor.

> COURT: It is denied.

> DEFENDANT: Thank you, Your Honor. At this time, Your Honor, as I have already related to you, I would like to put in a special request for instructions—

> COURT: First, does the defendant intend to present any evidence?

> DEFENDANT: No, Your Honor.

> COURT: Okay. All right. We will now move to the instruction conference. Does the state have any special instructions?

STATE: No, sir.

DEFENDANT: Yes, sir. The document that I handed up to Your Honor yesterday. I would particularly request the instruction that is given regarding the identification testimony. I would request an instruction regarding the defendant's right to silence and no inference of guilt to be raised therefrom. I would, also, appreciate, Your Honor, a cautionary instruction regarding undue inferences from the fact that there was a mug shot of the defendant in December of '81 shown to them, that that is not evidence of guilt in this case.

COURT: Okay, the instruction as to the identification testimony requested will be given. The instruction as to the failure of the defendant to testify will be given. The last instruction will not be given.

DEFENDANT: Thank you, Your Honor. And may I have an exception noted into the record.

The defendant correctly contends that he is entitled to a new trial because of the trial court's erroneous refusal to give the defendant's requested instruction limiting the jury's consideration of the evidence of the defendant's "mug shot." When a defendant charged with a criminal offense does not take the stand as a witness and does not offer evidence of his good character, the State cannot offer evidence of his bad character, including his previous criminal record, nothing else appearing. *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978). In *Fulcher*, the Supreme Court recognized that the introduction of a defendant's "mug shot" constitutes evidence of bad character:

In the present case, the double photograph (front and side view on the same card) of each of the four subjects, with or without the small chain visible about the neck of the subject, is so similar in style to photographs of "wanted men" displayed in post office lobbies across the nation as to leave little likelihood that the jury would fail to conclude that there were photographs taken from police files. *Thus, the use of them almost inevitably conveyed to the jury the circumstance that the defendant had had prior experience with police photography and thus tended to show bad character.* (Emphasis added.)

*Id.* at 513, 243 S.E. 2d at 345-46. *See also State v. Segarra*, 26 N.C. App. 399, 216 S.E. 2d 399 (1975). However, the *Fulcher* court held that the photograph of the defendant was admissible because it was competent evidence relating to the issue raised by defendant as to the propriety of the pre-arrest identification procedures. Because no limiting instructions were requested in *Fulcher*, 294 N.C. at 511, 243 S.E. 2d at 344, none were required. *Absent a request*, the trial court is not required to charge on a subordinate feature of the case. *State v. Hunt*, 283 N.C. 617, 197 S.E. 2d 513 (1973).

However, when evidence is competent for one purpose, but not for another, the party against whom it is offered is entitled, *upon request*, to have the jury instructed to consider it only for the purposes for which it is competent. *State v. Ray*, 212 N.C. 725, 194 S.E. 482 (1938), 1 Brandis on N.C. Evidence, § 79 (2d Rev. Ed. 1983). Thus, in both *State v. Norkett*, 269 N.C. 679, 153 S.E. 2d 362 (1967) and *State v. Austin*, 4 N.C. App. 481, 167 S.E. 2d 10 (1969), reversible error was found in the trial court's failure to instruct the jury, upon request, that evidence of prior convictions was not to be considered as substantive evidence of the defendant's guilt. More recently, in *State v. Erby*, 56 N.C. App. 358, 289 S.E. 2d 86 (1982), this Court held that it was reversible error for the trial court to deny the defendant's request for a limiting instruction that a prior inconsistent statement of a witness was only to be considered in determining that witness' credibility.

As in *Norkett, Austin* and *Erby*, the defendant here was entitled, upon request, to have the jury instructed that the fact that police files contained a photograph of the defendant taken in December of 1981 was not to be considered against the defendant in determining his guilt or innocence of the charged offense. The defendant's request was timely and the court's error was not harmless. The State's case against the defendant rested exclusively on the identification testimony of one witness. That testimony consisted of the description King gave the police after the robbery that the robbers were "two colored guys"; his testimony that the robbers were in the store for only three or four minutes and that he was forced to lie down part of the time so that he could not see; that he had never seen the defendant before and that he was completely unable to identify the other robber. There was no testimony presented to indicate that King ever gave a

more detailed description of the robbers. Furthermore, the finger-print taken from the store did not match defendant's. Identification testimony of a single witness with no other corroborating circumstantial evidence presents a substantial likelihood of mistaken identification. *United States v. Holley*, 502 F. 2d 273, 277 (4th Cir. 1974). For the foregoing reasons, defendant is entitled to a new trial.

We note that defendant also assigned as error the court's allowing the "mug shot" of defendant to be shown to the jury without taping over the printed material. However, on appeal defendant did not present the question in his brief. Therefore, the defendant is deemed to have abandoned the error assigned and we express no opinion on the issue of whether the trial court's admission of the "mug shots" without deleting or covering over the written material indicating defendant's prior involvement with the police was itself prejudicial error. *See State v. Young*, 60 N.C. App. 705, 299 S.E. 2d 834 (1983); *State v. Segarra, supra*; 30 A.L.R. 3d 908 (1970). Nor do we need to address defendant's motion to amend the record and supplement his brief to include the question presented as to the sentence defendant received as he must, in any event, be afforded a

New trial.

Judges HILL and PHILLIPS concur.