STATE OF NORTH CAROLINA v. L. J. HUNT

No. 8316SC1210

(Filed 28 December 1984)

1. **Constitutional Law § 76; Criminal Law § 48— pretrial silence—Miranda warning—admissible**

Where defendant was not given *Miranda* warnings and did not make a statement prior to trial, his silence about that which, if true, any rational person would have spoken was properly used to impeach his testimony at trial.

2. **Criminal Law § 86.4— second degree murder—prior assault warrant—admissible**

In a prosecution for second degree murder where defendant husband had testified that his relationship with his wife was entirely harmonious and he therefore had no motive to kill her, a prior assault warrant sworn out by the wife was competent and admissible, not for the purpose of proving the substantive facts asserted therein, but as an indication of the true relationship between defendant and his wife. An instruction limiting the evidence to impeachment was not required because defendant did not request such an instruction.

Judge WHICHARD dissenting.

APPEAL by defendant from *Clark (Giles R.), Judge.* Judgment entered 29 July 1983 in Superior Court, ROBESON County. Heard in the Court of Appeals 17 September 1984.

Defendant was found guilty of second degree murder in the shooting death of his wife and sentenced to imprisonment for a term of 15 years.

The evidence presented reveals that defendant's wife, Emma Hunt (Mrs. Hunt) was killed on 26 February 1983 in the bedroom of her home by a single shotgun blast to the head. That evening,

the home was occupied only by Mrs. Hunt, defendant, and Curly Jacobs, Jr. (Jacobs). Jacobs, the victim's natural child and stepson to defendant, served as the State's principal witness at trial. He testified that his mother and defendant had been drinking and watching television that evening. Defendant threw a drink to the floor and Mrs. Hunt motioned for her son to go to the rear of the trailer. In leaving, he saw his mother go towards the front door. Still within earshot, Jacobs heard the door close, his mother declare "L.J." and then a shot. As he returned to the living area of the trailer, defendant emotionally confessed that he had just killed his wife. Jacobs testified that he then attempted to reach the police but was physically prevented from doing so by defendant. After a brief struggle, Jacobs forced defendant out the front door and proceeded to speak with the authorities.

As the police arrived at the scene, they saw defendant, barefooted, "dart" from behind the trailer and attempt to hide by "squat[ting]" behind a nearby vehicle. An officer pulled her weapon and ordered defendant to halt and place his hands on top of his head. Upon being identified as L. J. Hunt, defendant was placed under arrest and made no statement before or after his arrest. There is no suggestion in the record or by defendant that he was ever given Miranda warnings.

Other evidence tends to show that the murder weapon belonged to defendant, that defendant and his wife had marital problems, that defendant had a serious drinking problem, was often abusive when he drank, and that he had struck his wife and threatened to kill both her and her children on prior occasions.

Defendant testified that it was Jacobs who had quarreled with Mrs. Hunt that evening and that he, defendant, was outside the trailer when the shot was fired. Defendant stated that he did not immediately enter the trailer because he did not recognize the noise as gunfire. Once having entered the trailer, however, defendant saw that Mrs. Hunt had been shot and immediately exited to "get the car" and "take her to the hospital." He claimed to have enjoyed a good relationship with his wife and denied that he was ever abusive towards her.

Jacobs' testimony at trial corresponded with what he told authorities at the scene on 26 February. Defendant, however, made no accusations against Jacobs that night and failed to make

State v. **Hunt**

any explanation to the police or prosecution officials as to how his wife had been killed until he testified in his own defense some five months later. On cross examination the following took place:

Q. You didn't tell the police officers any of this that you are telling the jury, here, on the night?

Mr. Bullard: Object.

Q. (By Mr. Townsend:) Did you?

The Court: Sustained as to the form of it.

Q. What did you tell the police officers on the night?

A. I didn't tell them anything.

Q. Okay. Fact is, you've not told anyone—

Mr. Bullard: Well, object to that.

The Court: Overruled.

Q. —about what you've told the jury, here, today; is that right?

A. No, I haven't.

The State was also permitted to introduce evidence that Mrs. Hunt had once sworn out an assault warrant against defendant. In response to her actions, defendant fled to Alabama for a period of time but was never convicted or arrested under the warrant. The defense unsuccessfully objected to the evidence but neglected to request that a special instruction be given to the jury as to how such evidence should be weighed. Defendant claims that the trial court committed prejudicial error and appeals.

*Attorney General Edmisten, by T. Byron Smith, Associate Attorney General, for the State.*

*James R. Glover, Appellate Defender Clinic, University of North Carolina School of Law, for defendant appellant.*

VAUGHN, Chief Judge.

[1] The initial issue raised on appeal is whether the pre-trial silence of defendant was properly used to impeach his in-court

testimony. Defendant argues that allowing himself to be cross examined violates defendant's due process rights under the 14th Amendment to the United States Constitution as well as his right to remain silent under the 5th Amendment and under art. 1, § 23 of the North Carolina Constitution. *State v. Lane,* 301 N.C. 382, 271 S.E. 2d 273 (1980). We hold that defendant has failed to show a violation under either provision.

In order to establish a violation of due process under the 14th Amendment by an attack on his pre-trial silence, defendant must at least show that he was given Miranda warnings and was thereby implicitly assured that the exercise of his right to remain silent would carry no penalty. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed. 2d 91 (1976) (three justices would have allowed the questioning even though Miranda warnings had been given). The record, however, fails to show and defendant does not argue that he was given Miranda warnings at or prior to arrest or during the extended period in which he remained silent and failed to offer any explanation. It was not, therefore, improper under the 14th Amendment due process clause to cross examine defendant regarding his pre-trial silence when he chose to take the stand. *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed. 2d 490 (1982) (rejecting the Sixth Circuit's decision which held that arrest alone was governmental action which implicitly induces a defendant to remain silent); *State v. McGinnis,* --- N.C. App. ---, 320 S.E. 2d 297 (1984); *State v. Burnett,* 39 N.C. App. 605, 251 S.E. 2d 717, *cert. denied,* 297 N.C. 302, 254 S.E. 2d 924 (1979).

The *Fletcher* court quoted with renewed approval from *Jenkins v. Anderson,* 447 U.S. 231, 239, 100 S.Ct. 2124, 65 L.Ed. 2d 86 (1980), a case dealing with pre-arrest silence:

> Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. 3A J. Wigmore, Evidence § 1042, p 1056 (Chadbourn rev, 1970). Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative.

*Fletcher,* 455 U.S. at 606.

The *Fletcher* court further held:

> In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.

*Id.* at 607.

The right to remain silent is, of course, protected by both the 5th Amendment to the United States Constitution and article 1, section 23 of the Constitution of North Carolina. Here, however, we are concerned with the long-standing and fundamental right of the State to impeach a defendant who waives his right not to testify with prior declarations or conduct that is inconsistent with his sworn testimony at trial. If the pre-trial statement or conduct is inconsistent, it may be used to impeach defendant. If it is not inconsistent, it does not impeach and may not be used. We are not aware of any decision of the Supreme Court of North Carolina that would place more or heavier burdens on the State's right to cross examine a testifying defendant than those imposed by the Supreme Court of the United States.

In *State v. Lane*, 301 N.C. 382, 271 S.E. 2d 273 (1980), defendant was charged with the sale of heroin. As the indictments were being read, he volunteered the statement that he had once sold heroin but had not sold any to the person named in the indictments. At trial both defendant and his boss testified that defendant was in Darlington, South Carolina at the time the sale was alleged to have been made in High Point. The court first noted that since the statement made by defendant was volunteered, the Miranda warnings were not applicable and thus the due process question discussed in *Doyle* did not arise. The single issue presented, as stated by the court, was "whether defendant's failure to disclose his alibi defense . . . amounts to an inconsistent statement in light of his in-court testimony relative to an alibi." *Lane*, 301 N.C. at 385, 271 S.E. 2d at 275. The court held that "[u]nder the particular circumstances of this case, it is our opinion

that the failure of defendant to state his alibi defense at the time the indictment was being read to him or at any time prior to trial did not amount to a prior inconsistent statement." *Id.* at 386-87, 271 S.E. 2d at 276.

The court reasoned:

The crux of this case is whether it would have been *natural* for defendant to have mentioned his alibi defense at the time he voluntarily stated that he "did not sell heroin to this person [Lee Walker]." We answer the question in the negative. In our opinion, the alibi defense was not inconsistent with defendant's statement that he did not sell heroin to Officer Lee Walker. At the time the indictment was being read to defendant on 25 April 1979, he was under arrest and was in custody in the Winston-Salem Police Department. At that point, with or without the Miranda warnings, his constitutional rights guaranteed by the fifth amendment were viable. The indictment charged that on 4 April 1979, some twenty-one days prior to the date of the reading of the indictment, defendant sold heroin to police officer Walker. It was *natural* for defendant to know whether he had sold drugs to a named person and spontaneously to deny having done so. In our opinion it would not be *natural* for a person, particularly under the circumstances present in this case, to know where he was on a given date some twenty-one days prior thereto. It is a matter of common knowledge that the average person cannot, *eo instanti*, remember where he was on a given date one, two or three weeks in the past without some investigation and substantiation from sources other than his ability of instant recall.

*Lane,* 301 N.C. at 386, 271 S.E. 2d at 276 [emphasis added].

The only question in *Lane,* therefore, was whether it would have been natural for defendant to have explained his alibi prior to trial. The court concluded that it would not have been natural and therefore his silence on the alibi defense was not inconsistent with his testimony at trial. That silence was, as a result, constitutionally protected. Under the test of *Lane,* therefore, the question before us is whether, when defendant saw that his wife had been shot by her own son, it would have been natural for him to have said so instead of being led away to jail on the accusations of the

real murderer who, because of defendant's silence, was left to go free. To us the question is easy. Indeed, it is inconceivable that he would not have volunteered the information. We hold that his silence about that which, if true, any rational person would have spoken was properly used to impeach his testimony at trial where, for the first time after his wife was murdered in his presence, he named her son as the murderer. His own brother testified as a witness for him. Yet, according to defendant's testimony as set out in this opinion, he had not even told his brother his version of how his wife was murdered. There is nothing ambiguous about defendant's silence, and we find it to be of considerable probative value in impeaching his testimony at trial.

The patent incredibility of defendant's silence here is even stronger than it was in *State v. McGinnis*, 70 N.C. App. 421, 320 S.E. 2d 297 (1984). In that case, the defendant was convicted of assault with a deadly weapon. The State's evidence revealed that defendant encountered his victim in a parking lot, exchanged words and shot him. Defendant was arrested shortly thereafter but, as in the present case, made no statement to the police until trial, at which time defendant testified that his weapon was fired accidentally. The Court noted that it would clearly have been natural for defendant to have told the arresting officer that the shooting was accidental, if defendant truly believed such to be the case. As a result, the State could use defendant's post-arrest silence in an attempt to impeach his testimony at trial. The court stated, correctly we think, that "[t]he test is whether, under the circumstances at the time of the arrest, it would have been *natural* for defendant to have asserted the same defense asserted at trial." *Id.* at ---, 320 S.E. 2d at 300 [emphasis added].

It does not make any difference whether defendant remains totally silent or makes some statement, as in *Lane*, that does not impeach his trial testimony. The question is whether he remains silent about matters that it would be natural for him to relate. If he does, his failure to speak out when it would have been natural for him to do so can be used to impeach him without encroaching on his constitutional right.

In a later case our Supreme Court took the opportunity to further explain its ruling in *Lane*:

>*Lane* stands for the proposition that comment by a prose-
>cuting attorney at trial upon defendant's *post-arrest* silence,
>as a general rule, is constitutionally impermissible. *Lane*
>does, however, recognize an exception to this rule: the prior
>inconsistent statement. This arises when defendant's silence
>amounts to a contradiction of his testimony at trial and oc-
>curs only when, *at the time of defendant's silence*, it would
>have been natural for him to speak and give the substance of
>his trial testimony.

*State v. Odom*, 303 N.C. 163, 165-166 n2, 277 S.E. 2d 352, 354-354
n2, *cert. denied*, 454 U.S. 1052, 102 S.Ct. 596, 70 L.Ed. 2d 587
(1981), *rehearing denied*, 454 U.S. 1165, 102 S.Ct. 1041, 71 L.Ed. 2d
322 (1982) (footnote included) (*citing* 3A Wigmore, Evidence
§ 1042 (Chadbourn rev. 1970) (when silence amounts to an incon-
sistent statement)) [emphasis added].

In *Burnett*, 39 N.C. App. 605, 608, 251 S.E. 2d 717, 719, the
prosecutor questioned defendant about his pre-trial silence as
follows:

>Q. Have you ever before this day, sitting on that witness
>stand, ever said anything to any law enforcement man, wom-
>an, or whatever, about this person Ike?

>A. No.

>Q. Have you ever said anything to the District Attor-
>ney's Office prior to today sitting on this witness stand here,
>said anything at all about this man Ike?

>MR. HOWARD: Objection.

>COURT: Overruled.

>A. No.

The court then stated through Mitchell, Judge (now Supreme
Court Justice):

>Nothing in the record on appeal before us in these cases
>indicates that either of the defendants were advised of their
>Miranda rights. As there is no evidence that these defend-
>ants were ever advised of their Miranda rights, advice as to
>those rights could not have implicitly assured them that their
>silence would not be used. Therefore, the Court's holding in

*Doyle* did not prohibit the use of the defendants' silence by the State in the context of the facts of these particular cases.

> When a defendant receives no assurance whatsoever that his silence will not be used against him, we do not believe it would be unreasonable or unfair to expect the accused to tell the authorities the identity of the perpetrator of the crime with which the defendant is charged, if the defendant has reason to believe that the perpetrator is someone other than himself. If the defendant has not been advised of his right to remain silent and waits until he takes the witness stand in his defense to first reveal the identity of the allegedly true perpetrator, the prosecutor may reveal the tardiness of any such statement as it tends to reflect upon the credibility of the statement.

*Id.* at 609, 251 S.E. 2d at 720.

Defendant's failure to assert these facts, when it would have been natural for him to do so, "amounts in effect to an assertion of the nonexistence of the fact" and thus constitutes an inconsistency which the jury properly considered as impeaching evidence. 3A Wigmore, Evidence, § 1042 (Chadbourn rev. 1970).

[2] Defendant's second argument describes as error the trial court's refusal to exclude evidence of prior assault charges instituted by Mrs. Hunt against defendant. We disagree.

Defendant testified in his own behalf. In so doing, he surrendered his privilege against self-incrimination and was properly subjected to impeachment by questions relating to specific acts of criminal and degrading conduct. *State v. Foster,* 284 N.C. 259, 200 S.E. 2d 782 (1973); *State v. Ashley,* 54 N.C. App. 386, 283 S.E. 2d 805 (1981), *disc. rev. denied,* 305 N.C. 153, 289 S.E. 2d 381 (1982), *rev'd on other grounds, State v. McGaha,* 306 N.C. 699, 295 S.E. 2d 449 (1982). "Cross-examination for purposes of impeachment is not . . . limited to questions concerning prior convictions, but also extends to questions relating to specific acts of criminal and degrading conduct for which there has been no conviction." *State v. Ross,* 295 N.C. 488, 490-91, 246 S.E. 2d 780, 783 (1978). The proper scope of such cross examination is limited only by the exercise of discretion, in good faith, by the trial judge. *State v. Purcell,* 296 N.C. 728, 252 S.E. 2d 772 (1979); *see, e.g., State v. Wise,* 27

N.C. App. 622, 626, 219 S.E. 2d 820, 822 (1975), *disc. rev. denied*, 289 N.C. 302, 222 S.E. 2d 702 (1976) ("grossly unfair" to preclude cross examination of defendant's "deal" with a police officer regarding another charge).

In the present case, defendant testified that his relationship with his wife was entirely harmonious and that he therefore had no motive to kill her. As a result, the assault charge was competent and admissible, not for the purpose of proving the substantive facts asserted therein, but as indicative of the true relationship between defendant and Mrs. Hunt. However groundless, evidence of the institution of criminal charges by Mrs. Hunt reveals serious marital tensions between the couple. The charges are therefore not unrelated to the present case and were within the knowledge of the defendant. *See State v. Purcell, supra.* We hold that the trial judge did not abuse his discretion in admitting the evidence over defendant's objections.

We note that when evidence is competent for one purpose, but not for another, a defendant is entitled, *upon request*, to have the jury instructed to consider it only for those purposes for which it is competent. *State v. Ray*, 212 N.C. 725, 194 S.E. 482 (1938); *State v. Foster*, 63 N.C. App. 531, 306 S.E. 2d 126 (1983). The record does not show, however, that defendant made any special request that the jury consider the evidence only for impeachment purposes. "Absent a request in apt time to limit and restrict such evidence to impeachment purposes, the trial judge is not required to give such instructions," *State v. Austin*, 4 N.C. App. 481, 482, 167 S.E. 2d 10, 11 (1969) (*citing State v. Goodson*, 273 N.C. 128, 159 S.E. 2d 310 (1968) ); *State v. Elkerson*, 304 N.C. 658, 285 S.E. 2d 784 (1982), and a general objection is insufficient to constitute a special request under these circumstances. *See, e.g. Austin*, 4 N.C. App. at 482, 167 S.E. 2d at 11 ("I request special instruction to the jury how they are supposed to consider any evidence . . ." [sic] held to be adequately specific). The trial court's failure to instruct was therefore not improper.

No error.

Judge JOHNSON concurs.

Judge WHICHARD dissents.

State v. Hunt

Judge WHICHARD dissenting.

The majority opinion phrases the question before the court as "whether, when defendant saw that his wife had been shot by her own son, it would have been natural for him to have said so. . . ." The majority so phrases the question because they read "[t]he only question in *Lane*," 301 N.C. 382, 271 S.E. 2d 273 (1980), to be "whether it would have been natural for defendant to have explained his alibi prior to trial." Having so framed the question, the majority is able to hold that "silence about that which, if true, any rational person would have spoken" may be used to impeach a defendant's testimony at trial. The majority determines the *Lane* court to have concluded that, absent *Miranda* warnings, silence that is not "natural" is not constitutionally protected.

In my view the North Carolina Supreme Court has not passed upon whether evidence of pretrial silence is admissible to impeach a criminal defendant who testifies at trial.[1] In *Lane* the court held that defendant's voluntary statement to police— "Hell, I sold heroin before, but I didn't sell heroin to that person"—did not amount to a prior statement inconsistent with his alibi defense at trial that could be used for impeachment purposes, *Lane*, 301 N.C. at 382, 386-87, 271 S.E. 2d at 274, 276. The question in *Lane* was not whether it would have been natural for defendant to have explained his alibi prior to trial. Rather, the court stated,

> The single question presented by this appeal is whether defendant was prejudicially deprived of his constitutional rights when the court permitted the district attorney to cross-examine him concerning his failure to disclose his alibi *at the time he made a statement to the police officers* or at any time before trial.

*Id.* at 383, 271 S.E. 2d at 274.

---

1. I regard the footnote in *State v. Odom*, 303 N.C. 163, 166, 277 S.E. 2d 352, 354 (1981), quoted in the majority opinion, as an incomplete statement regarding *Lane*. In the factual context of *Lane*, the reference is to silence within a statement, not to absolute silence as here. *Odom*, like *Lane*, does not directly pass upon the question presented here, *viz*, impeachment by total silence as opposed to impeachment by a partial statement that omits matter later presented at trial. The pages in *Lane* cited in the footnote in *Odom* at no place refer to impeachment by total silence. Further, the footnote cites *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed. 2d 1 (1971), which also dealt with a prior inconsistent statement, not prior silence.

Thus the *Lane* court framed the issue before it as whether a defendant could be impeached concerning his failure to disclose his alibi at the time he made a statement to police officers. *Id.* at 385, 271 S.E. 2d at 275. The court concluded,

Here it is clear that there was a violation of defendant's constitutional rights. The cross-examination attacked defendant's exercise of his right against self-incrimination in such a manner as to leave a strong inference with the jury that defendant's defense of alibi was an after-the-fact creation. The defense of alibi was crucial to defendant's case, and it seems probable that the cross-examination concerning his failure to relate his defense of alibi prior to trial substantially contributed to his conviction.

*Id.* at 387, 271 S.E. 2d at 277. The court held that the evidence was sufficiently prejudicial to warrant a new trial.

The majority speaks of the "patent incredibility" of defendant's silence about his alibi until a trial that occurred some eighteen months after arrest. The court in *Lane* found no such incredibility. At trial defendant there testified that on the day of the alleged heroin sale he had accompanied his employer to an automobile auction. *Lane*, 301 N.C. at 383, 271 S.E. 2d at 274. The court emphasized that a person may not know where he was on a given date, *eo instanti. Id.* at 386, 271 S.E. 2d at 276. The court did not suggest that defendant had any obligation to recall or furnish this alibi between the instant of arrest and trial. Under the *Lane* analysis the length of a defendant's silence has no bearing on whether it is constitutionally protected or sufficiently probative to be admissible under state evidence law.

Moreover, this case and *Lane* are factually distinguishable. In *Lane*, unlike here, defendant failed to disclose his alibi at the time he made a statement to the police. Thus, *Lane* involved a prior statement by defendant. The defendant here, however, made no statement to the police following his arrest. Rather, defendant testified to the following series of events: Defendant and his wife were planning to go to a movie and spend the night at a motel, as they did occasionally to be alone. Defendant's wife asked Jacobs, her grown son, about his rent which was three weeks overdue. Jacobs said he was not worried about the rent and defendant's wife stated that they had bills to pay. Jacobs threatened to slap

his mother, who then told Jacobs to pack and get out. (Jacobs admitted on cross-examination that he had had conversations with his mother about moving out.) Defendant then left the trailer to tend his hunting dog and was outside when the shot was fired. He was outside as well when the police arrived.

According to police testimony, upon seeing defendant the police immediately pulled their weapons and told him to halt. Defendant raised his hands. The officers handcuffed him and put him in a squad car.

The record shows that defendant remained in custody from the day of his arrest through trial; on sentencing he was given credit for 153 days in confinement. The record is silent as to *Miranda* warnings.

This case thus involves postarrest *silence* absent *Miranda* warnings, while *Lane* involved a postarrest *statement*. The court in *Lane* recognized a single exception to the constitutional right to silence: impeachment by a prior inconsistent statement. Silence plays a part in this exception only insofar as a prior inconsistent statement may be silent as to "a material circumstance presently testified to, *which it would have been natural to mention in the prior statement.*"[2] *Lane*, 301 N.C. at 386, 271 S.E. 2d at 276, *quoting State v. Mack*, 282 N.C. 334, 340, 193 S.E. 2d 71, 75 (1972).

The court in *Lane* explained its position by noting two situations in which a material omission converts a prior statement into a prior inconsistent statement. In the first situation a written statement (a letter) taken as a whole, by what it neglects to say as well as what it says, "affords some presumption that the fact was different from [the witness'] testimony." *Foster v. Worthing*, 146 Mass. 607, 16 N.E. 572 (1888), cited in *Lane*, 301 N.C. at 385, 271 S.E. 2d at 275-76. Thus, to illustrate the exception to the constitutional right to silence, the *Lane* court chose a situation in which a witness in a civil trial, not a criminal defendant, may be impeached by a letter in which he has omitted a material fact. In

---

2. This is to be distinguished from discrediting a witness—in contrast to a criminal defendant, at issue here—by conduct inconsistent with trial testimony, which carries no constitutional prohibition. *See* 1 Brandis, *North Carolina Evidence* Sec. 46, at 174-75 n. 64, 65, 66.

the second situation a witness (not a criminal defendant), who testified that she had heard the deceased threaten the defendant, was impeached by her failure to state that she had told a police officer that she had also heard defendant threaten the deceased. *Mack*, 282 N.C. 334, 193 S.E. 2d 71, cited in *Lane*, 301 N.C. at 385, 271 S.E. 2d at 276. The statement to police which omitted a material fact testified to at trial was admitted as a prior inconsistent statement.

The *Lane* court, therefore, did not suggest that silence per se is inconsistent with a later alibi defense which may be used to impeach. Further, *Lane* appears to support a result contrary to the majority's holding here. The court in *Lane* states:

> [W]e attach little significance to the fact that *Miranda* warnings were not given. With or without such warnings defendant's exercise of his right to remain silent [is] guaranteed by Article 1, Section 23, of the North Carolina Constitution and the fifth as incorporated by the fourteenth amendment to the United States Constitution.

*Lane*, 301 N.C. at 384, 271 S.E. 2d at 275. The court made this statement fully cognizant of *Jenkins v. Anderson*, 447 U.S. 231, 65 L.Ed. 2d 86, 100 S.Ct. 2124 (1980), and *Doyle v. Ohio*, 426 U.S. 610, 49 L.Ed. 2d 91, 96 S.Ct. 2240 (1976). It in fact distinguished *Jenkins* as a case in which defendant was not under arrest and thus not within the ambit of fifth amendment protection. *Lane*, 301 at 385, 271 S.E. 2d at 275. In *Jenkins* the United States Supreme Court held that the use of prearrest silence to impeach a defendant's credibility does not violate the United States Constitution. *Jenkins*, 447 U.S. at 238, 65 L.Ed. 2d at 94-95, 100 S.Ct. at 2129. In *Doyle*, the court held that it was fundamentally unfair to use postarrest silence against defendants after they had been impliedly assured via *Miranda* warnings that their silence would carry no penalty. *Doyle*, 426 U.S. at 611, 49 L.Ed. 2d at 94, 96 S.Ct. at 2241. The above quotation from *Lane* tends to indicate that our Supreme Court would  not limit *Doyle* to its facts. The reasoning of *Lane* and the pertinent language therein suggest that were the issue of impeachment by prior silence before our Supreme Court, as it was not in *Lane*, the court would hold that the right to remain silent is guaranteed by the North Carolina

Constitution, and that its exercise, with or without *Miranda* warnings, cannot be a basis for subsequent impeachment.[3]

The majority states that while the right to silence is protected by the Fifth Amendment to the United States Constitution and by Art. I, Sec. 23 of the Constitution of North Carolina, we are concerned here not with that fundamental right, but with the right of the state to impeach a defendant who testifies with prior declarations or conduct that is inconsistent with his or her testimony at trial. The majority do not state whether they classify defendant's silence as a "declaration," which it is not, or as conduct. They merely state that "[i]t does not make any difference whether defendant remains totally silent or makes some statement . . . ." I believe it makes a considerable difference and that the court in *Lane* was aware of both the difference and its relationship to state evidence law.

In *Jenkins*, the United States Supreme Court explicitly noted that it did "not force any state court to allow impeachment through the use of prearrest silence." 477 U.S. at 239, 65 L.Ed. 2d at 96, 100 S.Ct. at 2130. "Each jurisdiction remains free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial." *Id.* In *Fletcher v. Weir*, 455 U.S. 603, 607, 71 L.Ed. 2d 490, 494, 102 S.Ct. 1309, 1312 (1982), the Court further noted that a state "is entitled . . . to leave to the judge and jury under its own rules of evidence . . . the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony."

Thus, the Virginia Supreme Court has distinguished between impeachment by a defendant's silence as opposed to a prior inconsistent statement. *See Squire v. Commonwealth*, 222 Va. 633, 283 S.E. 2d 201 (1981). Under state constitutional law a Florida court has held it impermissible to comment on a defendant's postarrest silence whether or not *Miranda* warnings are given. The court said, "[A] state court is free to place greater restrictions on the

---

3. Additionally, even if the court holds that silence is impeachable absent *Miranda* warnings, *Fletcher v. Weir*, 455 U.S. 603, 71 L.Ed. 2d 490, 102 S.Ct. 1309 (1982), it is the prosecution's burden to establish that no *Miranda* warnings were given to bring the case within *Fletcher*. The court in *Fletcher* did not presume *Miranda* warnings were given. *See United States v. Cummiskey*, 728 F. 2d 200, 205 (3rd Cir. 1984). Here there is no evidence that the prosecution carried this burden of proof.

use of post-arrest silence than the *Doyle-Jenkins-Fletcher* trilogy requires, since to do so merely expands, but is consistent with, the minimal due process these cases announce." *Lee v. State*, 422 So. 2d 928, 930 (Fla. App. 1982). A Florida judge has also noted that: "The credibility of [a defendant's] testimony, like that of other witnesses, [is] subject to proper attack. A showing of . . . prior silence would not be a proper attack. However, a showing of a prior inconsistent statement is proper." *Crosby v. State*, 353 So. 2d 866 (Fla. App. 1977). An Alaska court has held that under Alaska law prosecutorial comment on defendant's postarrest silence is prohibited. *Bloomstrand v. State*, 656 P. 2d 584 (Alaska App. 1982). The Supreme Court of Colorado has held inadmissible a defendant's failure to make a statement to the arresting officer because of "the many possible explanations for . . . post-arrest silence." *People v. Quintana*, 665 P. 2d 605, 611 (Colo. 1983). It noted, "An arrestee is under no obligation to speak to the police." *Id.* at 610. The Supreme Court of New Jersey has stated, "[A]s a matter of state law the use of a defendant's silence is improper irrespective of [*Miranda*] warnings . . . ." *State v. Lyle*, 375 A. 2d 629, 632 (N.J. 1977).

While the United States Supreme Court has barred the use against a criminal defendant of silence maintained after receipt of governmental assurances, *Doyle*, 426 U.S. 610, 49 L.Ed. 2d 91, 96 S.Ct. 2240, both *Jenkins*, 447 U.S. 231, 65 L.Ed. 2d 86, 100 S.Ct. 2124, and *Fletcher*, 455 U.S. 603, 71 L.Ed. 2d 490, 102 S.Ct. 1309, involve silence not induced by the assurances contained in the *Miranda* warnings. These cases establish that, absent *Miranda* warnings, a state may determine under its own rules of evidence the impeachment value of pretrial silence.

It is also the province of a state to interpret its own constitution; the meaning of the Constitution of North Carolina is a matter of state law upon which the decision of our Supreme Court is final. *State v. Jarrette*, 284 N.C. 625, 655, 202 S.E. 2d 721, 741 (1974). For example, a decision of the United States Supreme Court construing the due process clause of the Fourteenth Amendment to the federal constitution, though persuasive, does not control our Supreme Court's interpretation of the "law of the

land" clause[4] in the Constitution of North Carolina. *Horton v. Gulledge*, 277 N.C. 353, 359, 177 S.E. 2d 885, 889 (1970).

Our Supreme Court thus was free to note, as it did in *Lane*, 301 N.C. at 384, 271 S.E. 2d at 275, that "[w]ith or without [*Miranda*] warnings defendant's exercise of his right to remain silent [is] guaranteed by Article 1, Section 23, of the North Carolina Constitution and the fifth as incorporated by the fourteenth amendment to the United States Constitution." Whether the defendant has received *Miranda* warnings should be immaterial in this context; there is "no reason for distinguishing between a defendant who has been advised of his right to remain silent and one who knows he has the right without being so advised." 2 Brandis, *North Carolina Evidence* Sec. 179, at 53 n. 21 par. 2.

I find no case placing the issue presented here, whether silence per se may be used to impeach a criminal defendant who chooses to testify in his own behalf at trial, directly before our Supreme Court. Pre-*Lane* cases from this Court dealt with situations in which defendants actually made a prior statement. *See, e.g., State v. Haith*, 48 N.C. App. 319, 269 S.E. 2d 205 (1980) (could impeach defendant by cross-examination about his failure to tell officers, while making an in-custody statement, that he was acting in self-defense); *State v. Pugh*, 48 N.C. App. 175, 268 S.E. 2d 242 (1980) (could impeach defendant by showing inconsistencies between trial testimony and prior statement); *State v. Fisher*, 32 N.C. App. 722, 233 S.E. 2d 634 (1977) (prior statement which failed to mention a material circumstance later testified to admissible for impeachment purposes).

The majority opinion cites *State v. Burnett*, 39 N.C. App. 605, 251 S.E. 2d 717, *cert. denied*, 297 N.C. 302, 254 S.E. 2d 924 (1979), in which the prosecutor was allowed to question defendant concerning his failure to make a statement after arrest. In that case, however, defendant did not properly object to the introduction of the evidence in question and thereby waived any later objection. *Id.* at 609, 251 S.E. 2d at 720. I thus do not consider that case dispositive here. It is not cited in *Lane*, 301 N.C. 282, 271 S.E. 2d 273, upon which the majority relies.

---

4. "No person shall be taken, imprisoned . . . or in any manner deprived of . . . life, liberty, or property, but by the law of the land." Art. I, Sec. 19, Const. of North Carolina.

The majority opinion also cites *State v. McGinnis*, --- N.C. App. ---, 320 S.E. 2d 297 (1984). In *McGinnis*, as here, the defendant "made no statements to police following his arrest." *Id.* at ---, 320 S.E. 2d at 299. Relying upon *Lane*, 301 N.C. 282, 271 S.E. 2d 273, the *McGinnis* court extended the *Lane* exception to fifth amendment protection for prior inconsistent statements to an exception for pretrial silence, as does the majority here. I believe *Lane* did not require that extension, and that, for the reasons stated here, it should not have been made.

Several months before our Supreme Court decided *State v. Lane*, 301 N.C. 282, 271 S.E. 2d 273, this Court stated:

> We emphasize that we do not reach the determination of whether the North Carolina Constitution would permit questioning as to prearrest silence in the fact situation in *Jenkins* [*v. Anderson*, 447 U.S. 231, 65 L.Ed. 2d 86, 100 S.Ct. 2124 (1980)]. *See e.g. State v. McCall*, 286 N.C. 472, 482-87, 212 S.E. 2d 132, 138-41 (1975) [defendant entitled to a new trial where . . . prosecutor commented directly on defendant's failure to deny an accusatory statement], and *State v. Castor*, 285 N.C. 286, 204 S.E. 2d 848 (1974) [defendant's silence in presence of accusations by state's witness not an admission]. Similarly, for the reasons expressed by the dissents of Mr. Justice Marshall and Mr. Justice Brennan in *Jenkins*, . . . we expressly refuse to hold that the North Carolina Constitution will permit, under all circumstances, that a criminal defendant who testifies in his own behalf may be impeached by some form of his prearrest silence.

*State v. Haith*, 48 N.C. App. at 328, 269 S.E. 2d at 211.

Postarrest or pretrial silence of a criminal defendant should not be used to impeach that defendant's in-court testimony, offered for the first time at trial, for the following reasons:

First, "in most circumstances silence is so ambiguous that it is of little probative force." *United States v. Hale*, 422 U.S. 171, 176, 45 L.Ed. 2d 99, 104, 95 S.Ct. 2133, 2136 (1975). Our Supreme Court has stated that a "defendant's silence as evidence of his guilt or for the purpose of impeaching him as a witness" is of "insignificant probative value." *State v. Williams*, 288 N.C. 680, 693, 220 S.E. 2d 558, 568 (1975). A defendant's pretrial silence may be

attributable to an awareness that there is no obligation to speak, or to a natural caution, or to a belief that an attempt to exonerate himself or herself would be futile. *People v. Conyers,* 420 N.E. 2d 933, 935 (N.Y. 1981). A defendant's silence may stem from a mistrust or fear of law enforcement authority, a not unreasonable interpretation of defendant's silence here. *Id.* "In short, . . . prior silence . . . may be attributable to a variety of . . . circumstances that are completely unrelated to the truth or falsity of [a defendant's] testimony. Accordingly, evidence of a defendant's pretrial silence must be regarded as having minimal probative significance and . . . a correspondingly low potential for advancing the truth-finding process even when offered solely for purposes of impeachment." *Id. Accord People v. Quintana,* 665 P. 2d at 611 (evidence of defendant's failure to make a statement to arresting officer held inadmissible as ambiguous and lacking in probative value); *People v. Jacobs,* 204 Cal. Rptr. 849 (Cal. App. 2 Dist. 1984); *People v. Fondron,* 204 Cal. Rptr. 457 (Cal. App. 5 Dist. 1984). While a prior inconsistent statement has a material bearing on the credibility of a witness, no such inference can be drawn solely from a defendant's silence. *See* Stansbury's North Carolina Evidence. (Brandis Revision 1973) Sec. 179, at 54 n. 96.

Moreover, the risk of prejudice is substantial when the prosecution attempts to impeach a defendant's testimony by his failure to make pretrial exculpatory statements. "Jurors, who are not necessarily sensitive to the wide variety of alternative explanations for a defendant's pretrial silence, may . . . construe such silence as an admission and . . . draw an unwarranted inference of guilt." *Conyers,* 420 N.E. 2d at 935. Because evidence of pretrial silence may have a disproportionate impact on the minds of the jurors, "the potential for prejudice inherent in such evidence outweighs its marginal probative worth. . . ." *Id. Accord Commonwealth v. Nickerson,* 434 N.E. 2d 992, 997 (Mass. 1982).

Second, drawing adverse inferences from silence impermissibly burdens the exercise of the privilege against self-incrimination and the right to present a defense. *See Griffin v. California,* 380 U.S. 609, 14 L.Ed. 2d 106, 85 S.Ct. 1229. *See also Commonwealth v. Nickerson,* 434 N.E. 2d 992 (Mass. 1982) (to permit use of prearrest silence for impeachment purposes suggests defendant had a duty to provide evidence against himself and burdens his right to testify in his own defense). An accused has

both the privilege not to incriminate himself or herself prior to trial and the right to testify in his or her own defense at trial. Impeaching a defendant by pretrial silence forces the defendant to choose between these two fundamental guarantees and to make that choice at an early stage in the proceedings, usually without the advice of counsel. Such impeachment suggests as well that one who ultimately chooses to testify retroactively waives all right to silence.

Third, impeachment of a criminal defendant by silence may impermissibly shift the burden of proof to the defendant. The threshold focus of a criminal trial is upon the sufficiency of the credibility of the prosecution's witnesses. When the defendant takes the stand the actual focus shifts to the defendant's credibility. If the defendant takes the stand but attempts to draw no significance from his or her pretrial silence, the prosecution should not be permitted to cross examine as to the significance of the silence to improve its own case in chief. *See People v. Bobo*, 390 Mich. 355, 212 N.W. 2d 190 (1973) (fact that witness did not make statement may be shown only to contradict statements that he did; "nonutterances" are not statements). *See generally* Schiller, *On The Jurisprudence of The Fifth Amendment Right To Silence*, 16 Am. Crim. L. Rev. 197, especially at 200-01 (1979).

The following from this Court's opinion in *Lane* is instructive:

It strikes this Court that the United States Supreme Court may be reluctant to strike down state court convictions, such as in *Doyle*, when the impeachment on cross-examination relates to a defendant's silence *before* he receives his *Miranda* warnings. For analytical purposes, the reading of the warning to an arrestee provides an easily recognizable signpost. It is clear from that point on that the arrestee *knows* he has the right to remain silent. The arrestee may not then be penalized at trial for exercising that right.

Of course, the whole reason for bringing out a defendant's silence on cross-examination is that the silence constitutes a prior "statement," inconsistent with his alibi. The reasoning is that silence in the face of accusation and possible prosecution is inconsistent with innocence, particularly where the arrestee has an alibi which he later reveals at trial.

This inconsistency, which is ambiguous at best, *see United States v. Hale*, 422 U.S. 171, 45 L.Ed. 2d 99, 95 S.Ct. 2133 (1975), vanishes altogether when a defendant's silence during the custodial interrogation can be taken to indicate reliance on the *right* to remain silent. *Hale*, at p. 177. The right to remain silent does not arise when an arrestee is given his *Miranda* warnings. It is a right which he possesses at all times under the Fifth Amendment of the United States Constitution and under Article I, Sec. 23 of the North Carolina Constitution. Our Supreme Court has repeatedly held that ". . . a defendant's constitutional right to remain silent while in custody precludes the admission of testimony that defendant remained silent in the face of accusations of his guilt." [Citations omitted.]

In summary, while the United States Supreme Court has held that use of pretrial silence to impeach a testifying defendant's credibility does not violate the United States Constitution, it has left to the states the formulation of their own rules defining when evidence of such silence is admissible. The states are also free to interpret their own constitutions; our courts thus can interpret the provision of our Constitution which grants to an accused in a criminal prosecution the right "not [to] be compelled to give self-incriminating evidence." N.C. Const., Art. I, Sec. 23.

*Lane* dealt with impeachment by a pretrial *statement*, while this case concerns impeachment by pretrial *silence*. The distinction is considerable, and the court here thus should not find *Lane* dispositive.

The question before the court is whether evidence of pretrial silence is admissible to impeach a criminal defendant who chooses to take the stand in his or her own behalf. If the right question is asked, the answer is not easy; nor have other jurisdictions found it so. The court is faced with balancing the inevitable tension between maintaining order in society and preserving hard-earned constitutional rights. I find no precedent from our Supreme Court which I believe to be controlling. Absent such, I would hold that evidence of defendant's pretrial silence is "insolubly ambiguous," *State v. Fisher*, 32 N.C. App. at 725, 233 S.E. 2d at 636, and thus irrelevant and inadmissible for impeachment purposes under general principles of state evidence law. Evidence that is highly prej-

udicial but of low probative value has traditionally been excluded from criminal trials because of its potential to distort the search for truth. The United States Supreme Court has stated, "When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out." *Shepard v. United States*, 290 U.S. 96, 104, 78 L.Ed. 196, 202, 54 S.Ct. 22, 25 (1933).

I also would hold such evidence inadmissible as violative of the privilege against self-incrimination provided by Art. I, Sec. 23 of the Constitution of North Carolina. To hold otherwise allows the State to convert exercise of the privilege against self-incrimination into a sword that pierces the credibility of a defendant who also exercises the right to present a defense at trial through his or her own testimony. The privilege against self-incrimination and the right to present a defense through one's own testimony were never intended to be mutually exclusive in their exercise; to make them so, as the majority opinion here in effect does, places a gloss on the one or the other that tends to negate it.

I thus respectfully dissent, and vote to award a new trial at which the impeaching evidence concerning defendant's pretrial silence must, upon objection as here, be excluded.